**Darrow L. TRITT and Marie Tritt**

v.

**The ATLANTIC RICHFIELD COMPANY, Eagle Picher Industries, Inc.; Owens–Corning Fiberglas Corp., Armstrong World Industries, Inc., GAF Corporation, Keene Corporation, Celotex Corporation, Fibreboard Corporation, Owens–Illinois, Inc., Nicolet, Inc., Garlock, Inc., D.A.R. Industrial Products, Inc., Pittsburgh–Corning Corporation; H.K. Porter Company, Inc., Southern Textile Corporation; Raymark Industries, Inc., Combustion Engineering, Foster Wheeler Corporation, Nosroc Corporation, Bevco Industries, Inc., A.P. Green Refractories Company, Pacor, Inc., Flexitallic Gasket Company, Inc., Turner and Newall, Ltd., Hopeman Brothers, Inc., Wayne Manufacturing Corporation, John Crane–Houdaille, Inc., Union Carbide Agricultural Products Company, Inc., the Flintkote Company.**

Civ. No. 86–4448.

United States District Court, E.D. Pennsylvania.

March 31, 1989.

Hal F. Doig, Media, Pa., for plaintiffs.

Faustino Mattioni, Philadelphia, Pa., for Atlantic Richfield.

Robert V. Dell'Osa, Philadelphia, Pa., for John Crane Houdaille.

Frederic L. Goldfein, Philadelphia, Pa., for Garlock, Inc.

Andre L. Dennis, Philadelphia, Pa., for Hopeman Bros. and Wayne Mfg.

Joseph F. Moore, Jr., Philadelphia, Pa., for Pittsburgh Corning Corp., Owens–Illinois, Inc., Fibreboard Corp., AP Refractories Co., Armstrong World Industries, Inc., Flexitallic Gasket Co., Keene Corp., Nosroc, Inc., Union Carbide Agr. Products and T & N, plc.

## MEMORANDUM AND ORDER

DITTER, District Judge.

Before me are motions for summary judgment filed by various defendants, manufacturers and distributors of asbestos-containing products.[1] Plaintiffs' complaint alleges jurisdiction under the admiralty law, 28 U.S.C. § 1333, and under the Jones Act, 46 U.S.C. § 688. Defendants seek to dismiss plaintiffs' claims against them on the grounds that the court lacks subject matter jurisdiction.[2] For the reasons set forth below, that motion is denied.

FACTS

Plaintiff Darrow Tritt was a merchant seaman who worked as a mechanic and maintenance man aboard ships owned by his employer, defendant ARCO, for twenty-three years. Plaintiff Marie Tritt is Darrow Tritt's wife.[3] Tritt's claims of asbestos exposure all relate to the performance

[1] On February 6, 1989, defendant Garlock, Inc., filed its motion for summary judgment together with a memorandum in support of its motion and supporting exhibits. On February 8, 1989, defendant John Crane–Houdaille filed its motion for summary judgment, incorporating by reference Garlock's motion and memorandum. On February 28, 1989, defendants Hopeman Brothers, Inc. and Wayne Manufacturing joined Garlock's request and adopted Garlock's legal analysis. On March 14, 1989, defendants Pittsburgh Corning Corporation, Owens–Illinois, Inc., Fibreboard Corporation, A.P. Green Refractories, Armstrong World Industries, Inc., Flexitallic Gasket Company, GAF Corporation, Keene Corporation, Nosroc, Inc., Union Carbide Agricultural Products, and T & N, plc, filed a joint motion for summary judgment in which they, too, adopted by reference Garlock's motion and memorandum.

Of all the defendants named in this action, only defendant Atlantic Richfield Company, plaintiff Darrow Tritt's former employer, opposes the motions filed by the various asbestos companies. Hence, hereinafter, defendant Garlock and those defendants who joined its motion will be referred to collectively as "defendants," and Tritt's former employer shall be referred to as "defendant ARCO" or "ARCO."

[2] Defendants also argue that pendant-party jurisdiction should not be applied in the event that I find subject matter jurisdiction lacking. Because I find that plaintiffs' claims fall within the federal court's admiralty jurisdiction, I need not reach the issue of pendant-party jurisdiction. I also need not address the alternative argument raised by defendant ARCO that its cross-claims against the defendant manufacturers fall within the court's ancillary jurisdiction.

[3] Hereinafter, all references to "Tritt" are made to plaintiff Darrow Tritt. The court's jurisdiction over claims by Marie Tritt for loss of society are addressed *infra*, p. 634.

of his duties aboard ARCO vessels, both at sea and at dock. The majority of Tritt's work took place in the ships' engine rooms, where he was responsible for the repair and maintenance of the ships' engines, boilers, heating systems, and related mechanical equipment. Asbestos insulation was an integral part of the equipment in the engine rooms and was in many ways essential to the proper functioning of the vessels. Defendants have not disputed Tritt's assertion that in the course of his work, as he removed and replaced insulation, he regularly handled and came into contact with large quantities of asbestos.

DISCUSSION

I. *Admiralty Jurisdiction over Claims by Darrow Tritt*

■ The Jones Act, 46 U.S.C. § 688, permits a seaman who suffers personal injuries in the course of his employment to sue his employer for damages in federal court. The rights available under the Jones Act, however, do not extend to suits against third parties who are not plaintiff's employer. *See Cosmopolitan Shipping Co. v. McAllister*, 337 U.S. 783, 789–90, 69 S.Ct. 1317, 1321, 93 L.Ed. 1692 (1949). As none of the defendant asbestos companies were Tritt's employer, and since diversity of citizenship is lacking, Tritt can only proceed on his claims against these defendants if the court has admiralty jurisdiction.

To invoke the court's admiralty jurisdiction puruant to 28 U.S.C. § 1333, Tritt must satisfy the two-prong test of *Executive Jet Aviation, Inc. v. City of Cleveland, Ohio*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972). *See also East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 106 S.Ct. 2295, 2299, 90 L.Ed.

2d 865 (1986) (recognizing products liability, including strict liability, as part of general maritime law). He must establish (1) that his injury occurred on navigable waters and (2) that the alleged "wrong bear[s] a significant relationship to traditional maritime activity." *Executive Jet*, 409 U.S. at 268, 93 S.Ct. at 504. If the wrong "is only fortuitously and incidentally connected to navigable waters," *id.* at 273, 93 S.Ct. at 507, the court lacks admiralty jurisdiction.[4]

In this case, defendants have not challenged Tritt's contention that his alleged injuries were sustained on navigable waters. Defendants maintain, however, that Tritt's complaint fails the second prong of the *Executive Jet* test because his asbestos-related claims do not bear a significant relationship to maritime activity.

In *Edynak v. Atlantic Shipping, Inc. CIE. Chambon Maclovia S.A.*, 562 F.2d 215 (3d Cir.1977), *cert. denied*, 434 U.S. 1034, 98 S.Ct. 767, 54 L.Ed.2d 781 (1978), the Third Circuit adopted the Fifth Circuit's criteria for determining whether torts occurring on navigable waters have the requisite maritime nexus. The court considered (1) the functions and roles of the parties; (2) the types of vehicles and instrumentalities involved; (3) the causation and the type of injury; and (4) traditional concepts of the role of admiralty law. *Id.* at 221 (citing *Kelly v. Smith*, 485 F.2d 520, 525 (5th Cir.1973), *reh'g denied*, 486 F.2d 1403, *cert. denied sub nom., Chicot Land Co. v. Kelly*, 416 U.S. 969, 94 S.Ct. 1991, 40 L.Ed.2d 558 (1974)).

Defendants cite *Woessner v. Johns–Manville Sales Corp.*, 757 F.2d 634 (5th Cir.1985), in support of their contention that Tritt's role aboard ship and their role

---

4. In his response to defendant Garlock's motion for summary judgment, Tritt first states that his injuries occurred on navigable waters, Plaintiffs' Response at 4, and later alleges that he suffered injuries from asbestos exposure "while sailing the high seas," Plaintiffs' Memorandum at 2. Both plaintiffs and defendants rely on plaintiffs' ability—or lack thereof—to satisfy the test set forth in *Executive Jet* as the basis for granting or denying admiralty jurisdiction without distinguishing between Tritt's activities on navigable waters and on the high seas. It should be noted, however, that the holding in *Executive Jet*, in

which the Supreme Court added the requirement of a "maritime nexus" to the traditional situs test for admiralty jurisdiction, applied to torts which occurred on navigable waters within the United States. 409 U.S. at 268, 93 S.Ct. at 504. The Court did not consider whether this same standard should apply to torts which allegedly occurred on the high seas. In *East River S.S. Corp.*, the Court declined to "reach the question whether a maritime nexus also must be established when a tort occurs on the high seas," 106 S.Ct. at 2298, and I need not reach it here.

as manufacturers of asbestos-containing products did not have the appropriate connection to maritime activity. Unlike Tritt, however, the plaintiffs in *Woessner* were land-based insulators employed by various contractors engaged in both maritime and non-maritime work.[5] Whereas the *Woessner* plaintiffs only spent between twenty-five and sixty percent of their time working on ships, *id.* at 637, Tritt was a career sailor whose contact with asbestos insulation was directly linked to his work aboard ocean-going vessels. Tritt's "function and role" aboard ARCO's vessels bore at least a "significant relationship" to maritime activity.

Defendants correctly note that in evaluating the first *Kelly* factor, the *Woessner* court considered that "the defendants ... are in no way uniquely tied to the maritime industry." *Id.* at 643. The court made clear, however, that this fact, alone, is not dispositive of the jurisdictional question. *Id.* at 647 (citing *Sperry Rand Corp. v. Radio Corp. of America*, 618 F.2d 319 (5th Cir.1980), in which a panel of the Fifth Circuit reversed a district court's decision denying admiralty jurisdiction where the defendants, manufacturers of small component parts, had not specifically designed their products for incorporation into marine systems). Allowing asbestos manufacturers and distributors to avoid the federal courts' admiralty jurisdiction simply because their products have a variety of uses, many of which are non-maritime, unduly prejudices those seamen whom admiralty law was designed to protect and undercuts the advantages derived from uniformity of law governing products liability in admiral-

ty. Even if defendants had not designed their asbestos products specifically for maritime use, their appearance aboard ARCO's vessels was certainly not fortuitous.[6] Hence, I find that since defendants reasonably could expect that their products would be utilized aboard ocean-going vessels, Tritt has satisfied the first factor of the *Kelly* test.

Tritt also satisfies the second *Kelly* factor, requiring a significant relationship between the types of vehicles and instrumentalities involved in his injury and maritime activity. Tritt spent the better part of twenty-three years at sea. The duties he performed that brought him into contact with asbestos products ensured that there was sufficient steam to run the ships, that piping did not become clogged with insulation materials, and that the engine rooms did not overheat or become too highly pressurized. Tritt's job, and the asbestos-containing equipment with which he worked, were central to the maritime function of ARCO's vessels, the transportation and delivery of oil products.

As to the third *Kelly* factor, defendants have not maintained that Tritt's contact with asbestos took place somewhere other than on ARCO's vessels. Tritt alleges that his injuries were caused by exposure to large quantities of asbestos dust discharged from the ships' insulation materials during the course of his maritime duties. The unique hazards associated with life at sea and the particular risks associated with Tritt's work in the ship's engine rooms may have contributed to the nature and extent of his contacts with as-

---

**5.** Several circuit courts have held that claims by land-based workers for injuries resulting from asbestos exposure while performing work aboard ships at dock are not within the court's admiralty jurisdiction. *See, e.g., Eagle-Picher Indus., Inc. v. United States*, 846 F.2d 888 (3d Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 490, 102 L.Ed.2d 527 (1988); *Woessner v. Johns-Manville Sales Corp.*, 757 F.2d 634 (5th Cir. 1985); *Oman v. Johns-Manville Corp.*, 764 F.2d 224 (4th Cir.), *cert. denied sub nom., Oman v. H.K. Porter Co.*, 474 U.S. 970, 106 S.Ct. 351, 88 L.Ed.2d 319 (1985); *Harville v. Johns-Manville Products Corp.*, 731 F.2d 775 (11th Cir.1984); *Myhran v. Johns-Manville Corp.*, 741 F.2d 1119 (9th Cir.1984). The distinction between land-

based and sea-based workers appears sound in light of the maritime nexus requirement of *Executive Jet;* however, because Tritt was stationed at sea, defendants' reliance on these holdings is misplaced.

**6.** Indeed, defendants would be hard-pressed to deny knowledge that their products were an integral part of ARCO's vessels. Defendants advertised and marketed their insulation materials as marine asbestos products. They published bulletins targeted to vessel owners in which they described the unique functions their products served on board a variety of vessels. *See* Exhibit D to Plaintiffs' Response.

bestos and the effects, if any, of his exposure. For this reason, his injury and the factors which allegedly caused it bear a significant relationship to maritime activity. *Cf. Myhran v. Johns–Manville Corp.,* 741 F.2d at 1122 (involvement of ships and their instrumentalities "at most tangential" to nature of tort claims by plaintiff, a land-based pipefitter in shipyards).

Finally, plaintiffs' claims comport with traditional concepts of the role of admiralty law. The ships on which Tritt worked were engaged in maritime commerce, a primary concern of admiralty law. *East River S.S. Corp.,* 106 S.Ct. at 2298. By maintaining the engine rooms in ARCO's ships, Tritt facilitated ARCO's maritime activities.

II. *Admiralty Jurisdiction over Claims by Marie Tritt*

 Although none of the parties addressed the issue of the court's jurisdiction over the claims for loss of society made by Marie Tritt, some discussion is warranted. Marie Tritt has no claim against ARCO, her husband's Jones Act employer, under either the Jones Act or the general maritime law based on negligence, *Beltia v. Sidney Torres Marine Transport, Inc.,* 701 F.2d 491, 492–93 (1983); however, she may have a claim against ARCO on the basis of the ship's alleged unseaworthiness under general maritime law. *American Export Lines, Inc. v. Alvez,* 446 U.S. 274, 280–81, 100 S.Ct. 1673, 1676–77, 64 L.Ed.2d 284 (1980). As to the asbestos company defendants, Marie Tritt's claims for loss of society due to negligence and strict liability are encompassed by general maritime law since these defendants were not her husband's employers. *Simeon v. T. Smith & Son, Inc.,* 852 F.2d 1421, 1433 (5th Cir.), *reh'g denied en banc,* 860 F.2d 1255 (1988).

An order follows.

### ORDER

AND NOW, this 31st day of March, 1989, it is hereby ordered that the motions for summary judgment of defendants Garlock, Inc., John Crane–Houdaille, Hopeman Brothers, Inc., Wayne Manufacturing, Pittsburgh Corning Corporation, Owens–Il-

linois, Inc., Fibreboard Corporation, A.P. Green Refractories, Armstrong World Industries, Inc., Flexitalic Gasket Company, GAF Corporation, Keene Corporation, Nosroc, Inc., T & N, plc, and Union Carbide Agricultural Products are denied.