Jerry **COCHRAN**, Plaintiff–Appellant,

**Geraldine Cochran, Plaintiff,**

v.

**E.I. duPONT de NEMOURS, Ren Plastics, Inc., Ciba–Geigy Corporation, Defendants,**

**American Abrasive Metals Co., Devoe & Raynolds Co., Hoechst Celanese Corporation, Grow Group, Inc., Palmer International, Inc., Defendants–Appellees.**

Jerry **COCHRAN, Geraldine Cochran,** Plaintiffs–Appellants,

v.

**E.I. duPONT de NEMOURS, Ren Plastics, Inc., Ciba–Geigy Corporation, Defendants,**

**American Abrasive Metals Co., Devoe & Raynolds Co., Hoechst Celanese Corporation, Grow Group, Inc., Palmer International, Inc., Defendants–Appellees.**

Nos. 90–8113, 90–8535.

United States Court of Appeals, Eleventh Circuit.

June 19, 1991.

---

Clinton Whetstone Sitton and Eugene Brooks, Middleton & Anderson, Savannah, Ga., for plaintiffs-appellants.

R. Wayne Thorpe and Elizabeth Anne Price Gilley, Alston & Bird, Atlanta, Ga., for E.I. duPont de Nemours and Ren Plastics.

Williston Carpenter White, Matthew G. Moffett, Jay L. Drew, Fortson & White, and C. Michael Evert, Jr., Evert & Weathersby, Atlanta, Ga., for American Abrasive.

Albert Hunter Parnell and Kimberly A. Houston, Freeman & Hawkins, Atlanta, Ga., for Devoe, Hoechst, Grow Group, Ciba and Palmer Intern.

Johnny Wayne Pierce and David J. Reed, Office of J. Wayne Pierce, Atlanta, Ga., for Palmer Intern.

Before HATCHETT and ANDERSON, Circuit Judges, and LIVELY *, Senior Circuit Judge.

HATCHETT, Circuit Judge:

In this case, we examine whether federal maritime jurisdiction extends to personal injury and products liability claims brought by an ex-Navy sailor who was allegedly exposed to silica and asbestos on an aircraft carrier. Because exercise of federal maritime jurisdiction would not advance the policies behind a uniform federal law of admiralty and the state statute of limitations has run, we affirm the district court.

## FACTS

In 1972, Jerry Cochran entered the Navy. During his tour of duty, the Navy assigned him to the deck grinding crew of the USS Independence, an aircraft carrier based in Norfolk, Virginia. On the carrier, his duties included maintaining the nonskid floor coating on the hangar deck where aircraft were stored during voyages. In maintaining the deck, Cochran would patch worn areas of the covering, grind it down, sweep it up, and occasionally reapply the nonskid coating. When the ship was in port in Norfolk, Cochran performed these duties three to five times per week. At sea, Cochran maintained the deck two days per week.

After working on the grinding crew for about six months, Cochran began to experience dizziness, chest pain, dyspnea, and hemoptysis. He attributed the cause of his respiratory problems to the dust generated during his grinding duties on the nonskid deck; thus, he requested and received a transfer to the laundry room.

In July, 1974, following treatment for non-specific chest and gastrointestinal pains, doctors diagnosed Cochran as having sarcoidosis, a lung disease with an unknown origin. He received an honorable discharge from the Navy in 1975, and after moving back to his home town in Albany, Georgia, spent several months in the Veterans Hospital for psychiatric treatment related to anxiety from his lung condition. Cochran has not worked since his discharge from the Navy, and he smoked approximately one and a half packs of cigarettes per day from 1969 to 1979.

As early as 1978, Cochran began attributing his lung problems to his military duties. In 1982, he told doctors that he felt his exposure to trichlorethylene from his grinding duties or benzene used in the ship's laundry may have caused his lung problems. Additionally, in 1982, Cochran consulted a toxicologist who found several solvents present in his system. Following these examinations, Cochran was once again diagnosed with possible sarcoidosis.

In 1984, a tissue analysis of the Arms Services Institute of Pathology revealed that Cochran had silica particles in his lymph nodes. The Department of Navy stated, however, that the silica particles in his lymph nodes could not be related to an occupational exposure in the Navy because the nonskid paint used in maintaining the aircraft carrier's deck contained silicone carbide. This report also reviewed Cochran's chest films from 1974 to 1982 and found no abnormalities related to silica. Cochran underwent several other examinations between 1985 and 1987 which revealed that his lung condition had not progressed since 1975. In August, 1987, a Veterans Administration physician recommended that Cochran be reevaluated for service-related disorder disability because his lung problem was likely silicosis rather than sarcoidosis. A physician examined

---

* Honorable Pierce Lively, Senior U.S. Circuit Judge for the Sixth Circuit, sitting by designa-

tion.

Cochran for asbestosis, but concluded that Cochran's heart was not enlarged, a symptom of that disease. Following the reevaluation, the Veterans Administration diagnosed Cochran as suffering from possible silicosis.

## PROCEDURAL HISTORY

In June, 1987, Cochran filed this lawsuit in the United States District Court, Northern District of Georgia, under diversity jurisdiction, alleging personal injury and products liability. The lawsuit was against the following companies and their products: American Abrasive Metal Company, manufacturer of Epoxo 1,000B; Palmer International, Inc., manufacturer of PM–501–M1; Devoe and Raynolds Company, Inc., manufacturer of Devran 237–M; Hoechst Celanese Corp., manufacturer of Devron 237–M; and Grow Group, Inc., manufacturer of Devran 237–M.[1] Cochran alleged that the nonskid coatings manufactured by these companies conformed to Navy specifications during 1970 to 1974, the period of his alleged exposure. Additionally, Cochran alleged that all of these products contained silica, and the products manufactured by American Abrasive and Palmer International also contained asbestos.

In March, 1989, Cochran filed another lawsuit in the United States District Court, Eastern District of Virginia, alleging admiralty jurisdiction. By agreement, the parties transferred the Virginia case to Georgia. Thereafter, the Virginia case was dismissed. The Georgia district court allowed Cochran to amend his original complaint in this case adding the admiralty claims.

Following discovery, the companies filed a motion for summary judgment. On November 2, 1989, the district court granted the companies' motions for summary judgment finding: (1) maritime jurisdiction did not encompass Cochran's claims for personal injury and products liability; and (2) the Virginia statute of limitations barred Cochran's lawsuit. In December, 1989, the district court granted the companies' motion to tax a total of $22,118.07 in costs against Cochran. Cochran appeals the summary judgment ruling in Case No. 90–8113, and the costs award in Case No. 90–8535.

## CONTENTIONS

Cochran contends that his personal injury and products liability claims fall within maritime jurisdiction because he was exposed to toxic dust while working as a sailor aboard a naval vessel on navigable waters both at sea and at port. Cochran further contends that his claims are not time barred under the Virginia statute of limitations and that the district court erred in awarding the companies costs. In response, the companies contend that the district court correctly granted their motions for summary judgment on Cochran's assertion of maritime jurisdiction and the Virginia statute of limitations. Additionally, the companies contend that the costs award falls squarely within 28 U.S.C. § 1920.

## ISSUES

Cochran presents three issues on appeal: (1) whether the district court erred in finding that federal maritime jurisdiction did not encompass his personal injury claims; (2) whether the district court erred in finding that his claims were time barred under the Virginia statute of limitations; and (3) whether the district court correctly awarded the companies $22,118.07 in costs.

## DISCUSSION

I. Standard of Review

■ The district court's grant of a motion for summary judgment requires plenary review. *De Cuellar v. Brady,* 881 F.2d 1561, 1565 (11th Cir.1989). Federal Rule of Civil Procedure 56(c) permits a summary judgment when the pleadings and affidavits establish "no genuine issue as to material facts and the moving party is entitled to judgment as a matter of law." Thus,

---

**1.** Cochran also named E.I. duPont de Nemours, Ren Plastics, Inc., and Ciba–Geigy Corporation as defendants. In May, 1988, the district court granted Cochran's motion to dismiss duPont.

Additionally, in April, 1989, the district court dismissed Ren Plastics, Inc. and Ciba–Geigy Corporation.

the Supreme Court has held that rule 56(c) mandates the entry of summary judgment against a party who fails to prove an essential element of the case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

## II. Federal Admiralty and General Maritime Jurisdiction

■ The judicial power of the United States extends to "all cases of admiralty and maritime jurisdiction." U.S. Const. Art. III, § 2. Congress effectuated this judicial grant in 28 U.S.C. § 1331 which provides: "The district court shall have original jurisdiction, exclusive of the courts of the States, of ... [a]ny civil case of admiralty or maritime jurisdiction." Maritime and admiralty jurisdiction of the federal courts traditionally depended upon the locality of the wrong, which required that the incident occur in navigable waters. *See Victory Carriers, Inc. v. Law,* 404 U.S. 202, 92 S.Ct. 418, 30 L.Ed.2d 383 (1971). In 1972, however, the Supreme Court retreated from its "purely mechanical application of the locality test" and stated that the locality test alone did not suffice as a predicate for admiralty jurisdiction. *Executive Jet Aviation, Inc. v. City of Cleveland,* 409 U.S. 249, 261, 93 S.Ct. 493, 501, 34 L.Ed.2d 454 (1972). The Court in *Executive Jet* did not replace the traditional locality test, but instead added a second prong, the nexus test, requiring a significant relationship between the incident and traditional maritime activity. *Executive Jet,* 409 U.S. at 268, 93 S.Ct. at 504.

Following the Supreme Court's pronouncement, the Fifth Circuit held that admiralty and general maritime jurisdiction required a showing of both location in navigable waters as well as a nexus to traditional maritime activity. *Kelly v. Smith,* 485 F.2d 520, 524 (5th Cir.1973).[2] In *Kelly,* the Fifth Circuit enunciated the following four significant factors in analyzing whether a nexus existed between the activity and traditional maritime jurisdiction: (1) the functions and roles of the parties; (2) the

types of vehicle and instrumentalities involved; (3) the causation and type of injury; and, most importantly, (4) the traditional concepts of the role of admiralty law. *Kelly v. Smith,* 485 F.2d at 525. The Supreme Court approved the Fifth Circuit's construction of admiralty jurisdiction in *Foremost Insurance Co. v. Richardson,* 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982). Thus, this circuit's current inquiry for admiralty tort jurisdiction includes the traditional navigable waters locality test supplemented by the nexus test. *Harville v. Johns–Manville Products Co.,* 731 F.2d 775, 781 (11th Cir.1984).

In *Harville,* employees of the Alabama Dry Dock and Shipbuilding Company who worked as insulators, pipe fitters, welders, boilermakers, machinists, foremen, and general laborers in the shipyard brought suit against several manufacturers and distributors of asbestos-containing insulation products. The plaintiffs alleged that they suffered a variety of pulmonary diseases as a result of their exposure to asbestos. The court found that the plaintiffs met the locality test for at least that part of their claims which occurred on navigable waters. *Harville,* 731 F.2d at 783. In analyzing the four elements of the nexus test, however, the court found that the plaintiffs failed to prove a sufficient nexus between the activity and maritime jurisdiction because they were land-based workers and the asbestos products involved were not designed and marketed solely for maritime use. *Harville,* 731 F.2d at 785. Specifically, the court noted:

'The primary purpose of admiralty jurisdiction is unquestionably the protection of maritime commerce.' *Foremost Insurance,* 457 U.S. at 674, 102 S.Ct. at 2658. Our precedent indicates that '[a]dmiralty jurisdiction in the federal courts was predicated upon the need for a uniform development of the law governing maritime industries.' *Peytavin v. Government Employees Insurance Co.,* 453 F.2d 1121, 1127 (5th Cir.1972). Disputes not involving these interests are

**2.** An en banc panel of this court adopted the precedent of the Fifth Circuit, as that court existed on September 30, 1981. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981).

not within the admiralty jurisdiction of the federal courts.

Like the plaintiffs in *Harville*, Cochran clearly satisfies the locality test. Cochran's alleged injuries occurred during his tenure as a sailor aboard the USS Independence while the ship was docked in navigable waters in Norfolk and while the ship was at sea. Thus, this court need only consider whether Cochran satisfied the four elements of the nexus test.

*The Nexus Test*

■ In determining whether Cochran's alleged injury bears a significant relationship to traditional maritime activity, this court considers the four factors set out in *Kelly v. Smith*, placing particular emphasis on the fourth factor, traditional concepts of the role of maritime law. *Lewis Charters, Inc. v. Huckins Yacht Corp.*, 871 F.2d 1046, 1051 (11th Cir.1989).

1. The function and role of the parties.

In *Harville*, the court stated that the proper question in examining the function and role of the parties is "whether the actual tasks the workers perform bear any inherent relationship to maritime activity, that is, whether the plaintiff's jobs are identical to those undertaken by land-based workers and are connected to maritime affairs merely because performed aboard a ship." *Harville*, at 784. The court in *Harville* found that the plaintiff's role and functions, although related to maritime commerce, did not call for the application of maritime jurisdiction. Unlike the plaintiffs in *Harville*, however, Cochran's job involved tasks that are traditionally performed by seamen. Cochran was a full-time sailor with many duties, one of which was maintaining the ship's deck which allowed storage of aircraft during voyages. Consequently, Cochran's maintenance work allowed the ship to perform as an aircraft carrier.

Additionally, the district court found that at least one of the companies, American Abrasive, designed, marketed, and advertised its products specifically for naval use aboard aircraft carriers. Although this factor is not dispositive of the function and

roles of the parties' inquiry, it buttresses Cochran's argument for admiralty jurisdiction.

2. The types of vehicles and instrumentalities involved.

The vehicle involved, the USS Independence, is a navigable vehicle whose function is transportation across navigable waters, a traditional role of water craft. Like the plaintiffs in *Harville*, performing work aboard a ship does not in itself subject personal injury and products liability claims to admiralty jurisdiction, particularly if the instrumentalities involved are not used specifically for maritime purposes. The instrumentality in the instant case, the non-skid floor covering, has several land-based uses including covering locker room floors, steps, cafeterias, lobbies, and other slippery surfaces. Consequently, Cochran's underlying claims would be no different if he had been working with the nonskid floor covering in a building on land. Thus, the involvement of a navigable vessel is at most tangential and does not directly affect the character of Cochran's claims. *Harville v. Johns–Manville*, 731 F.2d at 785.

3. Causation and type of injury.

The record shows that Cochran performed his deck maintenance duties three to five times per week while the ship was docked in Norfolk, Virginia, and twice a week while the ship was at sea. Thus, like the plaintiffs in *Harville*, Cochran's alleged exposure to the toxic dust occurred mostly while the ship was in port and not engaged in navigation or its function as an aircraft carrier. *See Lewis Charters, Inc. v. Huckins Yacht Corp.*, 871 F.2d at 1051. Furthermore, Cochran suffers from an injury that now afflicts thousands of land-based workers, which militates strongly against application of maritime jurisdiction.

4. Traditional concepts of the role of admiralty law.

■ In *Executive Jet*, the Supreme Court noted:

Through long experience, the law of the sea knows how to determine whether a

particular ship is seaworthy, and it knows the nature of maintenance and cure. It is concerned with maritime liens, the general average, captures and prizes, limitation of liability, cargo damage, and claims for salvage.

*Executive Jet,* 409 U.S. at 270, 93 S.Ct. at 505. Although admiralty law provides special protection for seamen, primarily in the context of rights to maintenance and cure, admiralty jurisdiction is predicated upon the need for a uniform development of laws governing maritime industries. *Executive Jet,* 409 U.S. at 260, 93 S.Ct. at 500–01. *See also Foremost Insurance Co. v. Richardson,* 457 U.S. 668, 677, 102 S.Ct. 2654, 2659, 73 L.Ed.2d 300 (1982). We fail to see how resolution of this case under admiralty and maritime law will have any potential impact on maritime commerce. Cochran cannot show a discernible relationship between his exposure to asbestos and the traditional maritime activities involving navigation or commerce on navigable waters. *Lewis Charter v. Huckins Yacht Corp.,* 871 F.2d 1046, 1052 (11th Cir.1989). Consequently, we decline to extend admiralty jurisdiction to cover Cochran's claims.[3]

### III. Virginia Law

■ Absent the application of general admiralty and maritime jurisdiction, Cochran's claims can survive only if they were timely filed under Virginia law.[4] In Virginia, a cause of action accrues at the time the damage occurs. *Locke v. Johns–Manville,* 221 Va. 951, 275 S.E.2d 900 (Va.1981). Cochran testified at trial that he started attributing his lung problems to his duties on the hangar deck as early as 1973 when he requested a transfer to the laundry room. The Navy honorably discharged Cochran in 1974. Additionally, medical examination records show that Cochran's lung disease has not changed since 1975.

Consequently, under Virginia law, Cochran's cause of action accrued at the latest in 1974, and the two-year statute of limitations barred Cochran' claims as of 1976.

■ Cochran relies, however, on the 1985 amendment to the Virginia code which recognizes the long latency period of asbestos-related diseases and thus provides:

Actions for injuries to the person resulting from exposure to asbestos or products containing asbestos, when a diagnosis of asbestosis, interstitial fibrosis, mesothelioma or other disabling asbestos-related injury or disease is first communicated to the person or his agent by a physician.

Va.Code § 8.01–249(4) (1985). Using this provision, Cochran argues that he was not told of his asbestos-related lung problems until 1987. Therefore, his cause of action was timely filed under the Virginia statute in 1987.

We note that only two of the companies involved, Palmer International and American Abrasive Metal Company, produced a nonskid covering containing asbestos. Thus, Cochran's lawsuit against the other companies, Devoe, Hoechst, and Grow, were not timely filed under the Virginia statute. Furthermore, Cochran cannot rely on Virginia Code § 8.01–249(4) to extend the statute of limitations in this case against American Abrasive Metals and Palmer International. As stated earlier, Cochran's claim accrued as of 1974, eleven years prior to the enactment of Virginia Code § 8.01–249(4). Although Virginia law offers no direct authority relating to cases such as Cochran's, a recent Virginia Supreme Court opinion questions whether section 8.01–249(4) should apply retroactively. *Roller v. Basic Constr. Co.,* 238 Va. 321, 384 S.E.2d 323 (Va.1989). In *Roller,* the plaintiff filed a claim in 1983 under the workers' compensation statute

---

**3.** Cochran raises several other arguments regarding the accrual of his action under federal admiralty and maritime jurisdiction. Since we find that maritime jurisdiction is inapplicable to Cochran's claims, we do not address these arguments.

**4.** We apply Virginia law since the bulk of Cochran's exposure to toxic dust allegedly occurred while the USS Independence was in port in Norfolk, Virginia. Under Georgia conflict of law rules, the situs of the tort governs the substantive law applied in resolving the tort. *Taylor v. Murray,* 231 Ga. 852, 204 S.E.2d 747 (Ga. 1974).

following her husband's death from asbestosis. Plaintiff's husband was last exposed to asbestos in 1977, but was not diagnosed with occupationally-related asbestosis until 1983. In allowing plaintiff to apply Virginia Code 1950, section 65.1–52 retroactively, the court reasoned that in the workers' compensation setting, a statute of repose, such as section 65.1–52 would not extinguish a preexisting cause of action if applied retroactively. *Roller v. Basic Const. Co.*, 238 Va. at 330, 384 S.E.2d at 327. Furthermore, the Virginia court stated:

> In any case arising within the traditional tort system, a cause of action arose when alleged wrongful or negligent acts were done, even though rights of actions may not have vested in individual plaintiffs until a later time.

*Roller v. Basic Const. Co.*, 238 Va. at 330, 384 S.E.2d at 327. Since Cochran's claims are within the traditional tort system, Virginia law would not apply a statute of repose, such as section 8.01–249(4) retroactively to his claims. Accordingly, Cochran's reliance on this statute is misplaced, and the district court correctly granted the companies' motions for summary judgment.

### IV. Costs

Cochran next contends that the district court incorrectly awarded the companies $22,118.07 in costs. According to Cochran, the companies failed to establish that the costs were allowable under 28 U.S.C. § 1920.[5] Specifically, Cochran takes issue with the companies' assessment of copying costs, witness fees, and deposition fees. Cochran argues that the costs were grossly inflated, and the district court's ruling in the companies' favor has a chilling effect on plaintiffs such as himself, a retired navy sailor.

■ This court refuses to disturb a cost award unless clear abuse of discretion is shown. *Tanker Management, Inc. v. Brunson*, 918 F.2d 1524, 1527 (11th Cir. 1990). Litigation costs are taxable under Federal Rule of Civil Procedure 54(d) which provides "that costs shall be allowed as a matter of course to the prevailing party." Additionally, 28 U.S.C. § 1920 specifies what costs may be properly taxed against the nonprevailing party.

■ The district court awarded American Abrasive $3,080.58 in costs, Palmer International $2,237.36, and Devoe $16,800.13, for a total of $22,118.07. The costs awarded to the companies fall squarely within the provisions of 28 U.S.C. § 1920. Since the companies were the prevailing parties, the district court correctly awarded them costs under rule 54(d). Cochran argues that the district court failed to scrutinize the claimed costs. He did not offer to the district court and does not offer to this court any factual support for this argument. Thus, finding no abuse of discretion, we affirm the district court's cost award.

### CONCLUSION

Because Cochran's claims are not cognizable under federal maritime jurisdiction, we find no justification to supplant Virginia state law with substantive admiralty law. Additionally, Cochran's claims are barred under the Virginia state statutes because his cause of action accrued as early as 1974, and he did not file suit until 1987.

---

**5.** Title 28 U.S.C. § 1920 provides:

Taxation of costs

A judge or clerk of any court of the United States may tax as costs the following:

(1) Fees of the clerk and marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3) Fees and disbursements for printing ad witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

(West 1966 & Supp.1991).

Likewise, Cochran's claims do not fall within the 1985 amendment to the Virginia Code. Additionally, the district court did not abuse its discretion in awarding the companies costs. Accordingly, we affirm the district court.

AFFIRMED.