**Cheryl D. LAMBERT, Administratrix of the Estate of Samuel D. Lambert, Deceased, Plaintiff,**

v.

**The BABCOCK & WILCOX, CO., John Crane, Inc., Combustion Engineering, Inc., Foster Wheeler Corp., LaClede Stoker Co., Owens–Corning Fiberglas Corp., Owens–Illinois, Inc., Pittsburgh Corning Corp. and W.R. Grace & Co., Inc., Defendants.**

Nos. 91–9997–C, IP 94–1540 C B/G.

United States District Court,
S.D. Indiana,
Indianapolis Division.

June 23, 1999.

Robert E Paul, Paul Reich Meyers PC, Philadelphia, PA, Thomas J. Young, Young Riley & Dudley, Indianapolis, IN, Robert A Bunda, Bunda Stutz & Dewitt, Toledo, OH, Margaret O Byrne, Daniel J O'Connell & Associates, Elgin, IL, Larry Evans, Hoeppner Wagner & Evans, Valparaiso, IN, Richard Ewing, Stewart & Irwin, Indianapolis, IN, Maxwell Gray, Lowe Gray Steele & Darko, Indianapolis, IN, for plaintiff.

Robin L Babbitt, Bingham Summers Welsh & Spilman, Indianapolis, IN, Michael Bergin, Locke Reynolds Boyd & Weisell, Indianapolis, IN, Steven D Hardin, McHale, Cook & Welch PC, Indianapolis, IN, Thomas W Hayes, Law Office of William M Koziol, Long Grove, IL, John S Keeler, Freihofer Minton Keeler & mcclamroch, Indianapolis, IN, Robert Kezelis, Frence Kezelis & Kominiarek, Chicago, IL, James K Wheeler, Coots Henke & Wheeler, Carmel, IN, for defendants.

### *ENTRY DENYING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND MOTIONS FOR RECONSIDERATION OF OUR ORDER GRANTING PLAINTIFF LEAVE TO AMEND*

BARKER, Chief Judge.

Plaintiff, Cheryl D. Lambert, brings this wrongful death action alleging that her husband, Samuel Lambert ("Mr.Lambert"), died on March 9, 1993 from illness caused by exposure to airborne asbestos while he served in the United States Navy on board the U.S.S. Buckley ("Buckley") from 1970 through 1973. This matter now comes before the Court on Defendants John Crane, Inc.'s (Crane) and W.R. Grace & Company, Inc.'s (Grace) (collectively known as "Defendants"[1]), motions for (1) summary judgment on the grounds that the Indiana Statute of Repose bars Plain-

---

1. Defendant Pittsburgh Corning (P.C.) also moved for summary judgment and a reconsideration of our December 30, 1998 Order. P.C. has since settled with Plaintiff. Thus, P.C.'s motions are *denied* as *moot*.

tiff's claims, and (2) reconsideration of our December 30, 1998 Order granting Plaintiff leave to amend her Complaint to add allegations that Mr. Lambert's asbestos exposure occurred while he served aboard the Buckley.[2] For the reasons discussed below, Defendants' motion for summary judgement is *denied* because the Indiana Statute of Repose does not apply, as this case is governed by maritime law. Defendants' motion to reconsider our Order granting Plaintiff leave to amend is also *denied* because Plaintiff's an amendment was not unduly prejudicial, untimely, futile, or pursuant to a dilatory motive. We reserve a ruling, however, on whether Plaintiff's amendment relates back to the date of the original Complaint to allow further briefing on the issue.

## I. BACKGROUND

On October 21, 1992, Samuel D. Lambert was diagnosed with Mesothelioma, an asbestos-related disease. He died six months later on March 9, 1993 at age 42. On October 19, 1994, Mr. Lambert's widow, Cheryl D. Lambert, acting as the Administratrix of his Estate, filed this wrongful death action alleging that Mr. Lambert died from illness caused by occupational exposure to airborne asbestos while working as a steam plant supervisor at Central State Hospital in Indianapolis, Indiana from 1970 to 1984. (*See* Original Complaint; 100 Notice of Complaint and Jury Demand). The original Complaint was based on diversity jurisdiction and alleged negligence and strict liability claims.

The Judicial Panel on Multi–District Litigation ("the Panel") subsequently trans-

ferred this action, along with all other federal asbestos personal-injury cases, to the United States District Court for the Eastern District of Pennsylvania for consolidated pretrial proceedings by Judge Charles R. Weiner.[3] While before Judge Weiner, Defendants conducted no discovery whatsoever. In a letter dated November 3, 1997, Plaintiff informed Defendants that Mr. Lambert's alleged asbestos exposure occurred while he served the United States Navy on board the U.S.S. Buckley as a boiler technician from 1970–1973. (*See* Plaintiff's Motion to Amend, Exhibit A). Thereafter, the case proceeded with the understanding that Plaintiff's claim was based on the alleged exposure while on board the Buckley.

Judge Weiner subsequently remanded the action back to us, and we set the matter for trial on February 22, 1999. In early December 1998, Defendants began filing motions for summary judgment based on the Indiana Statute of Repose. On December 14, 1998, Plaintiff filed a Memorandum of Law detailing her contention that this case is governed by maritime law. That same day, Magistrate Judge John Paul Godich held a pretrial conference during which Defendants' counsel reported that Plaintiff's Memorandum of Law provided Defendants' their first indication of Plaintiff's contention that the case is governed by maritime and/or admiralty law. Judge Godich responded to these developments by ordering Plaintiff to file a Motion for Leave to Amend Complaint no later than December 28, 1998 in order to add any cause of action based on maritime and/or admiralty law.[4] Judge

---

**2.** Each Defendant filed a separate motion for summary judgment and a separate motion for reconsideration, but the grounds asserted by each Defendant are parallel. Hence, we will use the singular in referring to Defendants' motions for summary judgment and Defendants' motions for reconsideration.

**3.** Delays, high costs, and a random pattern of noncompensation led the Panel to transfer all federal asbestos personal-injury cases to the Eastern District of Pennsylvania in an effort

to bring about a fair and comprehensive settlement. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 2253, 138 L.Ed.2d 689 (1997) (Breyer J., concurring in part/dissenting in part). Unfortunately, no such global settlement has been reached.

**4.** Plaintiff had amended her Complaint on two previous occasions. On October 20, 1995, Plaintiff amended her Complaint to added allegations that the exposure occurred from 1982 through 1992. (*See* First Amended

Godich ordered Defendants to file any responses to Plaintiff's Motion for Leave to Amend no later than January 19, 1999.

On December 28, 1998, Plaintiff filed her Motion to Amend Complaint to add allegations that:

> [Samuel Lambert's] exposure to asbestos and inhalation of asbestos which exposure and inhalation caused the mesothelioma and caused his death on March 9, 1993 arose and occurred during his employment on the U.S.S. Buckley during the years 1970–1973.

(Plaintiff's Third Amended Complaint ¶ 2).[5] The amendment also asserts that we have admiralty jurisdiction over this case. (*Id.* at ¶ 3). On December 30, 1998, we granted Plaintiff's motion, prompting the filing of Plaintiff's (Third) Amended Complaint ("the amendment") with the Court the same day. Defendants have since moved for reconsideration of our December 30, 1998 Order.

## II. MOTION TO RECONSIDER ORDER GRANTING LEAVE TO AMEND

■ We first address Defendants' motion to reconsider our December 30, 1998 Order granting Plaintiff leave to amend on the grounds that the amendment was untimely, unduly prejudicial, and pursuant to a dilatory motive.[6] Federal Rule of Civil Procedure 15(a) requires us to grant a leave to amend "when justice so requires." Leave to amend need not be given, [however], if there is an apparent reason not to do so, such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously al-

lowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Payne v. Churchich,* 161 F.3d 1030, 1036 (7th Cir.1998) (*quoting Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). Ultimately, the decision to grant or deny a leave to amend lies within the district court's discretion. *Id.; Crim v. Bd. of Ed. of Cairo School District No. 1,* 147 F.3d 535, 547 (7th Cir.1998).

■ Defendants contend that we should reconsider our Order because the amendment (1) was filed more than four years after the original Complaint, (2) gives rise to new substantive law, namely, maritime law and (3) was filed to avoid summary judgment. Plaintiff rejoins that no undue prejudice exists because Defendants had been on notice for over a year prior to the amendment that Plaintiff's case was based on Mr. Lambert's exposure while on board the Buckley. Defendants, in their reply, do not dispute they had notice of the amendment's factual allegations a year prior to the amendment, but insist they were surprised and prejudiced by Plaintiff's contention that the facts were governed by maritime law.

■ The fact that Plaintiff's motion was filed more than four years after the original Complaint does not, by itself, compel us to deny the motion. *See Tragarz v. Keene Corp.,* 980 F.2d 411, 432 (7th Cir. 1992). Defendants instead must establish that such a delay was unduly prejudicial, which they attempt to do by claiming that a change in the governing law will increase discovery and trial expense. Defendants also contend that the untimeliness of the

---

Complaint). On December 23, 1997, Plaintiff amended her Complaint to add defendants. (*See* Second Amended Complaint).

**5.** Mr. Lambert's Navy exposure is now the sole basis of Plaintiff's action, as conceded by Plaintiff throughout her filings in response to Defendants' motions for summary judgment and reconsideration of our December 30, 1998 Order. (*See, e.g.,* Plaintiff's Response to Motion to Reconsider at 1–2 ("only in the

Navy could product exposure be proved"; "exposure was solely in the Navy")).

**6.** Defendants also contend that the amendment was futile because the Indiana Statute of Repose bars the amended claim. The futility grounds asserted parallel Defendants' motion for summary judgment. Hence, we discuss that issue in connection with the summary judgment motion *infra.*

amendment will make it difficult for them to take advantage of the indemnification and contribution rules of maritime law.

Defendants' contentions land wide of the mark. The record is clear that Defendants had notice over a year prior to the amendment that Plaintiff would base her claim on the alleged Buckley exposure. In fact, since November 1997 (at the latest), the parties apparently have proceeded on the understanding that the Buckley exposure was the sole basis of the action. Because Defendants were on notice of the amendment's factual allegations for more than a year prior to the amendment itself, they were also on notice that maritime law would be invoked as the basis for this action. The record further indicates that Defendants conducted little discovery prior to November 1997, thus minimizing any prejudice by the amendment.

■ Moreover, while the specific timing of the amendment was undoubtedly motivated by Defendants' motions for summary judgment, the amendment itself properly reflects the case as it was being litigated. It was not merely an attempt to evade summary judgment. Rather, it was an attempt to bring the pleadings, into line with the facts being litigated by the parties and the law governing those facts.

Accordingly, Defendants' Motions to Reconsider Our December 30, 1998 Order granting Plaintiff's Motion for Leave to Amend on the grounds that the amendment was untimely, prejudicial and pursuant to dilatory reasons is *denied.*

### III. MOTION FOR SUMMARY JUDGMENT

A) *SUMMARY JUDGMENT STANDARDS*

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, to-gether with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists if there is sufficient evidence for a jury to a verdict in favor of the non-moving party on the particular issue. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Methodist Med. Ctr. v. American Med. Sec., Inc.,* 38 F.3d 316, 319 (7th Cir.1994).

In resolving a motion for summary judgment, a court must draw all reasonable inferences in the light most favorable to the non-movants. *Patel v. Allstate Ins. Co.,* 105 F.3d 365, 366 (7th Cir.1997); *Spraying Sys. Co. v. Delavan, Inc.,* 975 F.2d 387, 392 (7th Cir.1992). However, we must not "ignore facts in the record merely because they are unfavorable. . . . [A non-movant] gets the benefit of the doubt only if the record contains competent evidence on both sides of a factual question." *Patel,* 105 F.3d at 366. Thus, if genuine doubts remain, and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. *Shields Enters., Inc. v. First Chicago Corp.,* 975 F.2d 1290, 1294 (7th Cir.1992); *Wolf v. City of Fitchburg,* 870 F.2d 1327, 1330 (7th Cir.1989).

B) *THE INDIANA STATUTE OF REPOSE DOES NOT BAR PLAINTIFF'S CLAIM*

■ Defendants move for summary judgment on the grounds that the Indiana Statute of Repose bars Plaintiff's claims. Plaintiff rejoins that Indiana law does not apply in this case. Rather, federal maritime law governs this case, according to Plaintiff.[7]

---

7. The parties limit their discussion of the choice of law issue to Indiana law and federal maritime law. Neither party addresses the possibility of another state's law applying to this case, which would be an extremely important issue if federal maritime law were held not to apply.

■ Whether maritime law governs turns on whether this case falls within our admiralty jurisdiction, regardless of whether Plaintiff actually invoked that jurisdiction. *See Carey v. Bahama Cruise Lines,* 864 F.2d 201, 206 (1st Cir.1988); *Bodnar v. Hi–Lex Corp.,* 919 F.Supp. 1234, 1237–38 (N.D.Ind.1996).[8] The Supreme Court in *Jerome Grubart, Inc. v. Great Lakes Dredge and Dock Co.,* 513 U.S. 527, 534, 115 S.Ct. 1043, 1048, 130 L.Ed.2d 1024 (1995), held that a court has admiralty jurisdiction over a tort claim if the claim "satisf[ies] conditions both of location and of connection with maritime activity." The Supreme Court broke down the connection requirement into two subparts: the "potential disruption of maritime commerce" test and the "substantial relation to maritime activity" test. *Id.* We now apply this analysis to determine if the case at bar falls within the admiralty jurisdiction of this Court.

### 1. *The Location Test*

"A court applying the location test must determine whether the tort occurred on navigable water or whether the injury suffered on land was caused by a vessel on navigable water." *Grubart,* 513 U.S. at 534, 115 S.Ct. at 1048. This requirement is easily satisfied in this case since the alleged exposure occurred on a naval vessel in navigable water. These facts are undisputed by Defendants.

### 2. *The Connection Test*

To resolve the connection test we must address two issues. First, we must assess the general features of the type of incident involved to determine whether the incident had "a potentially disruptive impact on maritime commerce." *Id. (quoting Sisson v. Ruby,* 497 U.S. 358, 364 n. 2, 110 S.Ct. 2892, 2896 n. 2, 111 L.Ed.2d 292 (1990)). Second, we ask whether "the general char-

acter" of the "activity giving rise to the incident" establishes a "substantial relationship to traditional maritime activity." *Id.*

#### a) *The Potential to Disrupt Maritime Commerce*

The Supreme Court in *Sisson v. Ruby,* 497 U.S. 358, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990), set forth in detail what is meant by potentially disrupting maritime commerce. In that case, a fire erupted in the washer/dryer unit of a large pleasure yacht docked at a recreational marina on Lake Michigan. The fire spread to other recreational vessels and the marina itself. No commercial vessels were damaged since none were docked at the marina at the time of the fire (nor were any ever likely to be docked there).

In reversing the Seventh Circuit, the Court assessed the relationship between admiralty jurisdiction and the disruption of maritime commerce. The Court held that the jurisdictional inquiry does not require an assessment of the incident's *actual* effects on maritime commerce. Rather, admiralty jurisdiction exists if an incident creates a *"potential* hazard to maritime commerce," even though maritime commerce is in no way disturbed. *Id.,* 497 U.S. at 362, 110 S.Ct. at 2895 *(quoting Foremost Insurance Co. v. Richardson,* 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982)) (emphasis added). Moreover, in determining the existence of such a "potential hazard," a court should not consider the particular facts of the case before it, but "must assess the general features of the type of incident involved to determine whether such an incident is likely to disrupt commercial activity." *Id.* at 363, 110 S.Ct. at 2896. The Supreme Court concluded that the fire in *Sisson* "plainly satisf[ied]" this requirement, presumably be-

---

8. Plaintiff brings this case pursuant to our admiralty jurisdiction. While that fact is relevant to which procedural rules apply, it is irrelevant concerning what substantive law applies. *See Carey v. Bahama Cruise Lines,* 864 F.2d 201, 206 (1st Cir.1988). To be sure, we determine the applicable substantive law without regard to the jurisdiction Plaintiff asserts. *See id.*

cause it could have damaged commercial vessels, had any been docked at the time, or because the damage to the marina itself might have disrupted commercial maritime traffic. *Id.*

The incident in the case at bar—asbestos exposure in the boiler room of a ship—could potentially disrupt maritime commerce by rendering the boiler room too hazardous to operate. Unsafe working conditions aboard a vessel have consistently been held to pose a potentially disruptive impact upon maritime commerce, and this case is no exception. *See, e.g., Alderman v. Pacific Northern Victor, Inc.*, 95 F.3d 1061, 1064 (11th Cir.1996). The operation of the boiler room is a necessary function of a vessel and its shut down would certainly disrupt the ship's operation. *Cf. Tritt v. Atlantic Richfield Co.*, 709 F.Supp. 630 (E.D.Penn.1989). Moreover, asbestos-related illness could afflict other members of the crew, causing a labor shortage. *See* Thomas C. Galligan, Jr., *Of Incidents, Activities, and Maritime Jurisdiction: A Jurisdictional Exegesis*, La.L.Rev. (Spring 1996). Such a shortage could be exacerbated by fear of exposure by crew members and potential crew members alike. While the likelihood of this scenario may seem remote, a "remote possibility of impact on maritime commerce [is] ... enough to support admiralty jurisdiction." *Great Lakes Dredge & Dock Co. v. City of Chicago*, 3 F.3d 225, 228 (7th Cir.1993). Accordingly, we hold that this case satisfies the potential to disrupt maritime commerce prong of the *Grubart* test.

b) *Substantial Relationship to Maritime Activity*

Next, we "must determine whether 'the general character' of the 'activity giving rise to the incident' shows a 'substantial relationship to traditional maritime activity.'" *Grubart*, 513 U.S. at 534, 115 S.Ct. at 1048 (*citing Sisson v. Ruby*, 497 U.S. 358, 364–365 n. 2, 110 S.Ct. 2892, 2896–2897 n. 2, 111 L.Ed.2d 292 (1990)). "[T]he relevant 'activity' is defined not by the particular circumstances of the incident, but by the general conduct from which the incident arose." *Sisson*, 497 U.S. at 364, 110 S.Ct. at 2897. In *Sisson*, for example, the relevant activity was not the boat catching fire, but the storage and maintenance of the boat at the marina on navigable water. *Id.; see also Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982) (relevant activity is navigation of vessels generally where two pleasure boats collided); *Executive Jet Aviation, Inc. v. City of Cleveland, Ohio*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972) (relevant activity is air travel generally where a plane crashed in Lake Erie).

■ In the case at bar, Defendants attempt to define the relevant activity on the basis of the job duties Mr. Lambert was performing when he was allegedly exposed to asbestos, e.g., the installation of pipe fittings. While perhaps consistent with pre-*Sisson* jurisprudence in other circuits, that focus clearly is inappropriate in light of the Supreme Court's rulings in both *Sisson* and *Grubart*. The proper focus is on the general activity that caused the alleged injury which, in the instant case, is the maintenance and operation of a ship's boiler room. Again, we note that the boiler room is the heart of the ship's operations and its maintenance is vital to the ship's ability to conduct maritime related activities. Accordingly, the "activity" at issue in the case at bar clearly is substantially related to traditional maritime activity.

Our conclusion is consistent with the Eastern District of Pennsylvania's decision in *Tritt v. Atlantic Richfield Co.*, 709 F.Supp. 630 (E.D.Penn.1989) (Ditter, J.), in which a sailor allegedly was exposed to asbestos while working in ships' engine rooms. That court held that:

The duties [the plaintiff] performed that brought him into contact with asbestos products ensured that there was sufficient stream to run the ships, that piping did not become clogged with insulation materials, and that the engine

rooms did not overheat or become too highly pressurized. [The plaintiff's] job, and the asbestos-containing equipment with which he worked, were central to the maritime function of [the] vessels. . . .

*Id.* at 633. Similarly, in the case at bar, Mr. Lambert's job was central to the maritime function of the U.S.S. Buckley.

Arguing against admiralty jurisdiction, Defendants cite *Eagle–Picher v. U.S.*, 846 F.2d 888 (3rd Cir.1988) and *Cochran v. E.I. duPont de Nemours*, 933 F.2d 1533 (11th Cir.1991). In *Eagle–Picher*, the Third Circuit held that admiralty jurisdiction did not exist in an asbestos suit involving a sheet metal worker at the Philadelphia Naval Shipyard because "land-based ship workers bear no significant relationship to traditional maritime activity." *Id.* at 896. *Eagle–Picher* is clearly distinguishable from our case since Mr. Lambert's alleged asbestos exposure occurred while working as a crew member on a ship in navigable waters—not as a sheet metal worker on land in a shipyard.[9]

Unlike *Eagle–Picher*, the facts in *Cochran* are very similar to those here. In *Cochran*, a former Navy sailor (Cochran) was allegedly exposed to asbestos while serving on the deck grinding crew aboard the U.S.S. Independence (an aircraft carrier based in Norfolk, Virginia). Cochran's duties included maintaining the nonskid floor coating on the hangar deck where aircraft were stored during voyages.[10] Af-

ter contracting lung disease, Cochran sued the manufacturers of the nonskid coating he had been applying to the deck of the *Independence*, claiming that the asbestos contained in their products caused his illness. The district court granted the defendants' motions for summary judgement finding: (1) maritime jurisdiction did not apply, and (2) the Virginia statute of limitations barred the lawsuit.

The Eleventh Circuit affirmed, holding that admiralty jurisdiction did not exist based on the application of a four-part "totality of circumstances" test enunciated in *Kelly v. Smith*, 485 F.2d 520, 525 (5th Cir.1973), which looked to the functions and roles of the parties; the types of vehicles and instrumentalities involved; the causation and the type of injury; and traditional concepts of the role of admiralty law. *Cochran*, 933 F.2d at 1539. The Eleventh Circuit found that the *Kelly* test was not satisfied in that case because (1) the instrumentality that allegedly caused the injury (the nonskid floor covering) had several land-based uses, (2) Cochran's exposure occurred mostly while the ship was in port, (3) Cochran's injury afflicts thousands of land-based workers, and (4) resolution of the case under maritime law would not have any impact on maritime commerce.

If *Cochran* were still good law, it would be relatively persuasive.[11] Since that decision, however, both the Seventh Circuit and the Supreme Court have rejected the *Kelly* test upon which the *Cochran* deci-

9. Several other circuit courts have held that claims by land-based workers for injuries resulting from asbestos exposure while performing work aboard ships at dock are not within the court's admiralty jurisdiction. *See, e.g., Woessner v. Johns–Manville Sales Corp.*, 757 F.2d 634 (5th Cir.1985); *Harville v. Johns–Manville Products Corp.*, 731 F.2d 775 (11th Cir.1984); *Myhran v. Johns–Manville Corp.*, 741 F.2d 1119 (9th Cir.1984). Again, these cases are distinguishable from the instant case because Mr. Lambert was stationed at sea.

10. Notably, however, Mr. Lambert's injury occurred while maintaining an essential component of the ship's operation. By contrast,

Cochran's injury occurred while maintaining the desk's surface which is ancillary to the ship's maritime operation.

11. Notable factual distinctions exist between *Cochran* and the case at bar, however. First, Mr. Lambert's alleged exposure occurred predominately on the high seas, while the plaintiff in *Cochran* was exposed primarily while his ship was in port. Second, Mr. Lambert's exposure occurred while servicing the boiler room, which is an essential part of the ship's maritime activities, while the plaintiff in *Cochran* maintained the desk, which is ancillary to a ship's maritime activities.

sion rests. *See Great Lakes Dredge & Dock Co. v. City of Chicago,* 3 F.3d 225, 228 (7th Cir.1993), *aff'd, Grubart,* 513 U.S. at 544, 115 S.Ct. at 1053. *Grubart* and *Great Lakes* involved the infamous 1992 Chicago flood which was brought on when a breach occurred in the roof of a freight tunnel running beneath the Chicago River. Water rapidly filled that tunnel and spread to the web of tunnels located throughout the city's downtown area, flooding a number of buildings connected to the tunnel system. Great Lakes, a contractor hired by the City to replace pile clusters at various bridge sites along the river, was sued by thousands of plaintiffs in state court. Hoping to limit its liability and receive indemnification from the City, Great Lakes filed a complaint in federal district court against the City on the basis of admiralty jurisdiction. Pursuant to a motion by the City and Jerome B. Grubart, Inc. (a downtown business who had filed a claim in the proceeding), the district court dismissed the case for lack of subject matter jurisdiction, holding that admiralty jurisdiction did not exist based on the *Kelly* test.

Reversing, the Seventh Circuit held that the *Kelly* test is not the proper test for admiralty jurisdiction in light of the Supreme Court's decision in *Sisson,* 497 U.S. 358, 110 S.Ct. 2892, 111 L.Ed.2d 292, in which the Court endorsed a rigid analysis, not the policy based analysis set forth in

*Kelly,* 485 F.2d 520. The Seventh Circuit went further, holding that "[a] court may not engage in the sort of policy analysis that apparently informed the district court's decision. Similar policy analysis would likely have yielded a different result in *Sisson* itself." *Great Lakes,* 3 F.3d at 228. On appeal, the Supreme Court affirmed the Seventh Circuit and, in doing so, rejected the *Kelly* test on several grounds, declaring that the test is "hard to apply, jettisoning relative predictability for the open-ended rough-and-tumble of factors, inviting complex argument in a trial court and a virtually inevitable appeal." *Grubart,* 513 U.S. at 547, 115 S.Ct. at 1055.

With the *Kelly* test now clearly a relic of the past, *Cochran*'s persuasive value becomes highly questionable, particularly since much of its rationale is based on policy and factual considerations deemed inappropriate by *Great Lakes* and *Grubart.* Any remaining vestige of persuasive value in *Cochran* to our case is eliminated entirely by the fact that the *Grubart* test is fully satisfied here, as previously discussed.[12] Accordingly, consistent with *Grubart,* we hold that maritime law governs this case.

### 3. *The Indiana Statute of Repose Does Not Bar Plaintiff's Claim*

▇▇▇ Having found that substantive maritime law applies to determine the

---

**12.** Courts have routinely applied maritime law to personal injury cases involving asbestos exposure aboard a ship on navigable water. *See, e.g., Miller v. American President Lines, Ltd.,* 989 F.2d 1450 (6th Cir.1993); *Goldsby v. Celotex Corp.,* 591 F.Supp. 615 (W.D.Mo.1984); *Dragon v. Cooper/T.Smith Stevedoring Company, Inc.,* 726 So.2d 1006 (La.App.1999); *Sheffield v. Owens–Corning Fiberglass Corp.,* 595 So.2d 443 (Ala.1992); *Swogger v. Waterman Steamship Corp.,* 151 A.D.2d 100, 546 N.Y.S.2d 80 (N.Y.App.Div. 1989). Also, the Fourth Circuit in *Vaughan v. Johns–Manville Corp.,* 662 F.2d 251 (4th Cir.1981), dealt with a case involving a Navy sailor who was exposed to asbestos while serving as a boiler tender aboard various naval vessels. The Fourth Circuit held that admiralty jurisdiction existed in rejecting the defendants' motion for summary judgment

on state law statute of limitations ground. Unfortunately, the court did not give a detailed analysis, instead citing the reasons stated in its opinion in *White v. Johns–Manville Corp.,* 662 F.2d 234 (4th Cir.1981), which case involved land-based shipyard workers suing asbestos manufacturers under admiralty jurisdiction. On en banc review, the Fourth Circuit reversed the *White* decision, leaving the validity of the *Vaughan* decision in doubt. *See Oman v. Johns–Manville Corp.,* 764 F.2d 224 (4th Cir.1985) (en banc). Notably, however, the Fourth Circuit reversed *White* based largely on the fact that the plaintiffs in that case were land-based. By contrast, *Vaughan* involved a sea-based plaintiff, suggesting that the reasoning in the en banc reversal does not apply to *Vaughan.* Indeed, *Vaughan* itself was not actually overruled.

rights and liabilities of the parties in this case, we next address whether the Indiana Statute of Repose nevertheless bars Plaintiff's claim. While the Supreme Court in *Yamaha Motor Corp., U.S.A. v. Calhoun,* 516 U.S. 199, 215, 116 S.Ct. 619, 628, 133 L.Ed.2d 578 (1996), recently held that courts may use state law to supplement the remedies available for wrongful death under the general maritime law, it also reiterated that state laws inconsistent with the substance of federal maritime law should be given no effect. The Uniform Statute of Limitations for Maritime Torts provides that "a suit for recovery of damages for personal injury or death, or both, arising out of a maritime tort, shall not be maintained unless commenced within three years from the date the cause of action accrued." (46 U.S.C.App. § 763a). The Indiana Statute of Repose provides a ten-year statute of repose for claims brought under the Indiana Product Liability Act. (Ind.Code § 33–1–1.5–5). The Indiana and federal maritime statutes clearly are inconsistent, rendering the Indiana Statute Repose inapplicable to this case, pursuant to the Supreme Court's decision in *Yamaha. See White v. Mercury Marine, Division of Brunswick, Inc.,* 129 F.3d 1428, 1431 (11th Cir.1997) (Florida statute of limitations inconsistent with federal maritime statute of limitations). Moreover, the maritime statute of limitations was intended to be uniformly applied in federal maritime law cases, (*see id.*), and the supplemental application of the Indiana Statute of Repose would undermine that uniformity. *See Yamaha,* 516 U.S. 199, 116 S.Ct. 619, 133 L.Ed.2d 578 (state law may only supplement if Congress has not prescribed a rule in this area that must be uniformly applied to maritime cases). Therefore, Plaintiff's claim is governed by the Uniform Statute of Limitations for Maritime Torts, 46 U.S.C.App. § 763a, and not the Indiana Statute of Repose.

Accordingly, Defendants' motion for summary judgment on the Indiana Statute of Repose grounds is *denied.* Defendants' motion to reconsider our December 30, 1998 Order on futility grounds parallels Defendants' summary judgment position. Hence, Defendants' motion to reconsider on futility grounds is also *denied.*

## IV. RELATION BACK AMENDED COMPLAINT

█ A final issue remains. In its brief in support of its motion to reconsider, Defendant John Crane contends in passing that Plaintiff's amendment should not relate back to the date of the original Complaint. This argument is not well-developed and instead refers generally to Defendants' arguments against permitting the amendment itself.[13] The resolution of this issue may be significant to whether Plaintiff's claim satisfies the timing requirements contained in the Uniform Statute of Limitations for Maritime Torts, 46 U.S.C.App. § 763a.

Leave to amend under Fed.R.Civ.P. 15(a) does not automatically guarantee relation back under Fed.R.Civ.P. 15(c). *See Delgado–Brunet v. Clark,* 93 F.3d 339, 343 (7th Cir.1996). Relation back is permitted only when "the claim asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleadings." Fed.R.Civ.P. 15(c). In this case, the original Complaint alleged that Mr. Lambert was exposed to asbestos while working as a steam plant supervisor at Central State Hospital from 1970 through 1984.[14] The Amended Complaint, on the other hand, alleges that Mr. Lambert was exposed while aboard the Buckley from 1970 through 1973. Hence, the question becomes whether Plaintiff's Buckley claim "arose out of the conduct, trans-

---

**13.** Defendant Grace has not addressed the relation back issue.

**14.** The dates of the Central State Hospital exposure were later amended to be 1982 through 1992.

action or occurrence" set forth in the original Complaint.

▮ Plaintiff argues that the Amended Complaint should relate back, citing *Drakatos v. R.B. Denison, Inc.*, 493 F.Supp. 942 (D.Conn.1980), in support of that position. In *Drakatos*, the district court granted the plaintiff leave to amend his complaint to allege maritime jurisdiction shortly after the defendant had filed for summary judgment on state law statute of limitation grounds. Unlike the amendment at issue in the instant case, however, the amendment in *Drakatos* did not allege new facts. Rather, the new jurisdictional theory was based on the same facts alleged in the original complaint. *Drakatos* is consistent with Seventh Circuit jurisprudence, which recognizes that relation back is permitted when an amended complaint asserts a new claim on the basis of the same core of facts, but involving a different substantive legal theory than that advanced in the original pleading. *See Bularz v. Prudential Ins. Co.*, 93 F.3d 372 (7th Cir.1996); *Worthington v. Wilson*, 8 F.3d 1253, 1256 (7th Cir.1993).

As suggested above, the case at bar is easily distinguishable from both *Drakatos* and the aforementioned Seventh Circuit authority insofar as Plaintiff's amendment added an entirely new set of facts, namely, the alleged Buckley exposure. The parties, however, fail to pursue this analysis with requisite vigor or to provide us with a developed factual record. The rationale behind Rule 15(c) is to allow an amendment to relate back to the filing of the original complaint where the defendant has been put on notice, through the pleadings or from other sources, of the entire scope of the transaction or occurrence out of which the amended complaint arises. *See* 6A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure 2d, § 1497 (1990). The record establishes that Defendants were informed outside the pleadings of the Buckley facts in November 1997. The parties have not discussed the implications (if any)

of that disclosure, nor have they provided us with a sufficient factual record upon which to rule on the relation back issue. Thus, we invite the parties to address the relation back issue and the application of the Uniform Statute of Limitations for Maritime Torts to this case in supplemental briefs.

### *V. CONCLUSION*

For the above explicated reasons, Defendants' motions to reconsider our December 30, 1998 Order granting Plaintiff's motion for leave to amend are *denied* because the amendment was not untimely, unduly prejudicial, pursuant to a dilatory motive, or futile. Defendants' motions for summary judgment are also *denied* because the Indiana Statute of Repose is inapplicable, as this case is governed by Maritime law. We reserve a ruling on whether Plaintiff's amendment relates back to the date of the Original Complaint to allow supplemental briefing on the issue and on whether Plaintiff's case complies with the Uniform Maritime Statute of Limitations. Each Defendant is allowed 30 days from the date of this Entry to file a supplemental brief on these issues; Plaintiff is allowed 20 days to file responsive briefs. Each Defendant will have an additional 10 days to file a reply.

It is so ORDERED.