# Edna H. Roller

## v.

# Basic Construction Company, et al.

Record No. 870400

September 22, 1989

Present: All the Justices

322

*Robert R. Hatten; Christopher D. Cerf (Joel I. Klein; Richard Glasser; Patten, Wornom & Watkins; Onek, Klein & Farr; Glasser & Glasser*, on brief), for appellant.

*Brian N. Casey (Gerald E. W. Voyer; Taylor & Walker, P.C.*, on brief), for appellee.

Justice Russell delivered the opinion of the Court.

In this workers' compensation case, we must determine whether the claimant's right to benefits was affected by a legislative change in the statute of limitations. Ordinarily, in cases originating before the Industrial Commission, a decision of the Court of Appeals is final, Code § 17-116.07(A)(2), but we granted this appeal because it involves "matters of significant precedential value." Code § 17-116.07(B).

Clyde F. Roller was employed by Basic Construction Company (Basic), first as a carpenter and later as a carpenter foreman, from 1949 to 1977. He lived with his wife in Newport News until his 1977 retirement, and thereafter the couple made their home in Waynesville, North Carolina. During his employment, Mr. Roller repeatedly worked on jobs involving the installation of asbestos insulating materials. His exposure to asbestos continued until his retirement.

Mr. Roller complained of pain in his left side in 1977 and consulted a physician in Newport News who detected rales in both lungs. In 1981 and 1982, Mr. Roller's health deteriorated mark-

edly, and he consulted physicians in North Carolina. Chest x-rays taken in those years showed abnormalities indicative of pulmonary fibrosis, but no evidence of pneumonia or tumors. He was admitted to hospitals on several occasions but was given no diagnosis suggesting occupational disease.

In January 1983, Mr. Roller was referred to Dr. William R. Domby, a physician in Asheville, North Carolina, who was board-certified in pulmonary medicine. By means of a needle biopsy, Dr. Domby diagnosed Mr. Roller's condition as a necrotizing squamous cell carcinoma of the right lower lobe. His examination also revealed diffuse interstitial fibrosis of both lungs. Because the patient had been continuously exposed to asbestos fibers, aggravated by heavy smoking in the past, Dr. Domby regarded his condition as probably related to industrial exposure to asbestos. The deteriorated condition of the lungs rendered the cancer inoperable, and Dr. Domby informed Mr. Roller that his condition was terminal.

Because of the devastating psychological effect of that information, Dr. Domby chose not to tell Mr. Roller at that time of the causal link between his industrial exposure to asbestos and his cancer. Dr. Domby testified positively that he did not then communicate a diagnosis of asbestosis to Mr. Roller. By June 1983, the Rollers evidently suspected the existence of such a causal link, because they employed an attorney who wrote Basic to the effect that he was investigating "the possibility of litigation against suppliers of asbestos." Nevertheless, the unrefuted testimony of Mrs. Roller, who recorded the event in a diary which she kept during these years, was that Dr. Domby first communicated to the Rollers a diagnosis of asbestosis, and a causal connection between Mr. Roller's exposure to asbestos and his lung cancer, on August 22, 1983.

Mr. Roller died on December 24, 1983, of cardiac arrest caused by lack of a sufficient oxygen supply from his impaired lungs. On August 6, 1985, Mrs. Roller filed a claim for workers' compensation benefits, including death benefits, based upon Mr. Roller's occupational disease. Basic and its insurance carrier defended the claim on the grounds, among others, that the claim was not filed within five years after Mr. Roller's last injurious exposure to asbestos in his employment, and that the claim was not filed within two years after the diagnosis of the disease was first communicated to him.

The deputy commissioner who heard the case made a factual determination from the conflicting evidence that the claim had been filed within two years after the diagnosis of the occupational disease was first communicated to Mr. Roller. The deputy commissioner also decided that the five-year limitation was inapplicable because of the amendment of the statute discussed below, resolved the remaining issues in the claimant's favor, and entered an award of compensation.

Basic appealed to the full commission, which reversed, holding that the five-year limitation was applicable and barred the claim. For this reason, the Industrial Commission did not reach the remaining issues.

Mrs. Roller appealed to the Court of Appeals, which, by order entered March 25, 1987, affirmed the decision of the Industrial Commission. The Court of Appeals held that the claim was controlled by the statute of limitations in effect prior to July 1, 1983, that the applicable statute contained a limitation period expiring five years after the claimant's "last injurious exposure in employment," and that the amendment of the statute "did not, and could not, revive a claim that was already barred by the statute of limitations."

Mrs. Roller argues that the claim is governed by the statute of limitations in effect after July 1, 1983. Alternatively, she contends that even if the rights and duties of the parties were fixed before that date, the legislature intended the 1983 amendment to have retrospective effect and there is no constitutional reason why it should not be so applied.

Basic contends that the statute of limitations governing workers' compensation claims is substantive, and limits the claimant's right rather than merely barring his remedy. As a corollary, Basic argues, when the limitation period has run the employer acquires a right of immunity from the time-barred claim, a right which we will refer to as a right of repose. Such a right of repose, the argument continues, is vested or at least substantive in nature and may not constitutionally be impaired by subsequent legislation. Therefore, Basic contends, retrospective application of the 1983 amendment would unconstitutionally deprive Basic of a right of repose which had accrued in 1982, when the five-year limitation expired.

█ Prior to July 1, 1983, Code § 65.1-52 provided, in pertinent part:

The right to compensation under this chapter shall be forever barred unless a claim be filed with the Industrial Commission within one of the following time periods:

1. For coal miners' pneumoconiosis, three years . . .

2. For byssinosis, two years . . .

3. For all other occupational diseases, two years after a diagnosis of the disease is first communicated to the employee or *within five years from the date of the last injurious exposure in employment, whichever first occurs.*

. . .

The limitations imposed by this section as amended shall be applicable to occupational diseases contracted before and after July 1, 1962 . . . .

(Code of Va. 1950, 1980 Repl. Vol. 9A, 1982 cum. supp.) (emphasis added).

■ Effective July 1, 1983, the General Assembly amended Code § 65.1-52 by inserting, between subsections 2 and 3, quoted above, a new subsection 2a:

For asbestosis, two years after a diagnosis of the disease is first communicated to the employee; . . .

The effect of the 1983 amendment was to remove the five-year limitation contained in the italicized language of the former statute as it related to asbestosis claims, while retaining its effect upon all other unspecified occupational diseases.[1]

To recapitulate the pertinent dates:

| | | |
|---|---|---|
| Last injurious exposure to asbestos | — | 1977 |
| Five-year limitation expires | — | 1982 |

---

[1] This case does not involve mesothelioma due to exposure to asbestos. That disease, and several other specified occupational diseases having long periods of latency, are specifically excepted from the five-year limitation by subsequent provisions of Code § 65.1-52.

| Effective date of amendment deleting five-year limitation | — | July 1, 1983 |
|---|---|---|
| Diagnosis of occupational disease first communicated to employee | — | August 22, 1983 |
| Death of employee | — | December 24, 1983 |
| Claim filed | — | August 6, 1985 |
| Two-year limitation expires | — | August 22, 1985 |

Without question, Mrs. Roller's right to compensation is barred by the lapse of five years from the date of her husband's last "injurious exposure in employment" if the earlier version of the statute is controlling. On the other hand, if the case is controlled by the amendment effective July 1, 1983, the claim was timely filed within the two-year period after communication of the diagnosis, which was the only limitation then applicable. We resolve the question by reference to the fundamental nature of the workers' compensation scheme.

As frequently stated, the Workers' Compensation Act (the Act) is based upon a *quid pro quo*, a societal exchange wherein employees are provided a purely statutory form of compensation for industrial injuries. The remedy is modest, but relatively certain. Claimants are free from the necessity of proving negligence and resisting such affirmative defenses as contributory negligence and assumption of the risk. In exchange, employers under the canopy of the Act are sheltered from common-law liability in tort. *See, e.g., Whalen* v. *Dean Steel Co.*, 229 Va. 164, 170-71, 327 S.E.2d 102, 106 (1985). Where the statutory scheme of workers' compensation applies, it entirely replaces the common-law tort system. Code § 65.1-40. Because the General Assembly, in fashioning the statutory scheme, created a new right to compensation, unknown at common law, it could, and did, impose upon the new right such limitations as it deemed just. *See Winston* v. *City of Richmond*, 196 Va. 403, 407, 83 S.E.2d 728, 731 (1954). Such statutory limitations become an integral part of the new right, defining and controlling it; they pre-empt common-law principles that might otherwise apply.

In a common-law setting, a cause of action is a set of operative facts which, under the substantive law, may give rise to a right of action. A right of action belongs to some definite person; it is the remedial right accorded that person to enforce a cause of action. It arises only when that person's rights are infringed. Un-

less otherwise provided by statute, traditional statutes of limitations begin to run, not when a wrongful act is done, but when injury or damage results from it and the cause of action has thus ripened into a right of action. *First Va. Bank - Colonial v. Baker*, 225 Va. 72, 81-83, 301 S.E.2d 8, 13-14 (1983); *Locke v. Johns-Manville Corp.*, 221 Va. 951, 959, 275 S.E.2d 900, 905 (1981). In that traditional setting, the distinction between a cause of action and a right of action must be kept in mind. Although a typical common-law plaintiff's right to sue does not accrue until he has sustained injury, and the statute of limitations only then begins to run as to him, certain rights and obligations may have become fixed at an earlier time when the wrongful act was done — when the cause of action arose. Those rights may be vested rights, entitled to constitutional protection. Even where not vested, they may be substantive rights which the legislature may not constitutionally abridge. Examples are a joint tort-feasor's right to contribution, *Shiflet v. Eller*, 228 Va. 115, 120-21, 319 S.E.2d 750, 754 (1984), and the right of one joint tort-feasor to be released when the plaintiff has released another. *Bartholomew v. Bartholomew*, 233 Va. 86, 91, 353 S.E.2d 752, 755-56 (1987).

Under the statutory workers' compensation scheme, these common-law distinctions are inapplicable. In fashioning the right to compensation, the legislature made express provision for the time when the right would accrue and the rights and duties of the parties would become fixed. The Act provides that employers and employees alike are "conclusively presumed" to have accepted the provisions of law requiring payment of compensation for "personal injury or death by accident arising out of and in the course of the employment." Code § 65.1-23. Under the Act, the rights of both employer and employee become "fixed" at the time an "injury by accident" occurs. *Barksdale v. H.O. Engen, Inc.*, 218 Va. 496, 498-99, 237 S.E.2d 794, 797 (1977). Before the occurrence of such an event, the employer has no liability and the employee has no cognizable claim. *See Cook v. Clinchfield Coal Co.*, 215 Va. 599, 600, 212 S.E.2d 263, 264 (1975).

In the case of a traumatic injury covered by the Act, the time of occurrence of an "injury by accident" is ordinarily obvious. But the General Assembly, realizing that ascertainment of this critical point in time would present great difficulty in the case of the insidious onset of an occupational disease, made express statutory provision to resolve the difficulty. Code § 65.1-49 pro-

vides that "first communication of the diagnosis of an occupational disease to the employee . . . shall be treated as the happening of an injury by accident." Thus, in the case of an occupational disease, the rights and duties of both the employer and employee under the Act become fixed at the time the diagnosis of the disease is first communicated to the employee.

█ When that rule is applied to the present case, it is apparent that the rights and duties of the claimant and the employer under the Act became fixed on August 22, 1983. The deputy commissioner made a finding of fact, supported by credible evidence in the record, that the first communication of a diagnosis of asbestosis, an occupational disease cognizable under the Act, was given to Mr. Roller on that date. The state of the law in effect on that date, therefore, controls the case. Because neither the employer nor the employee had any rights or duties *inter se* under the Act before that date, there were no rights, vested or substantive, to be disturbed by the statutory amendment which took effect July 1, 1983.

█ For that reason, this case differs from *School Bd. of the City of Norfolk* v. *U.S. Gypsum*, 234 Va. 32, 360 S.E.2d 325 (1987). There, in a common-law action sounding in tort, we decided questions certified by a federal court involving a cause of action extinguished by Code § 8.01-250,[2] which we determined to be a "statute of repose" rather than an ordinary statute of limitations. Statutes of repose, unlike statutes of limitations, are not merely procedural. They reflect a legislative decision to extinguish all causes of action after passage of an arbitrary period of time, and are not merely limitations upon the assertion of remedies. Under such a statute, a potential defendant acquires a substantive right of repose after the running of the statutory period. *Id.* at 38-39, 360 S.E.2d at 328. That right may not constitutionally be impaired by subsequent legislation purporting to enlarge the plaintiff's time to sue. *Id.*

In the present case, Basic draws an analogy between the five-year statute of repose provided by Code § 8.01-250, which, we held in *U.S. Gypsum*, conferred substantive rights upon the defendant, and the five-year limitation period after the "last injurious exposure in employment" contained in Code § 65.1-52 prior

---

[2] Code § 8.01-250 provides a limitation for actions against architects and builders which expires "five years after the performance of furnishing of such services and construction."

to July 1, 1983. Basic contends that by 1982 it had acquired the same right of repose under the latter section as the defendants in *U.S. Gypsum* acquired under Code § 8.01-250.

We do not agree. In *U.S. Gypsum*, as in any case arising within the traditional tort system, a cause of action arose when allegedly wrongful or negligent acts were done, even though rights of action might not have vested in individual plaintiffs until a later time. The statute of repose had the effect of extinguishing those causes of action five years after they arose, creating a substantive right of repose in the potential defendants which subsequent legislation could not abridge. In the setting of the Workers' Compensation Act, by contrast, there is no preexisting cause of action to be extinguished by a statute of repose. The rights of employer and employee become fixed at the time an "injury by accident" occurs. If a statute of repose is in effect on that date, and if it applies under the facts of the case, it governs. But a former statute of repose, repealed before the date of the "injury by accident," has no application whatever.

Because the reciprocal rights and duties of the parties do not come into existence until the time of an "injury by accident," no preexisting rights are abridged when the General Assembly amends the Act. Before the occurrence of such an injury, neither party has a vested interest in the continuing existence of the statutory scheme in unaltered form. The General Assembly is free to amend the Act, including its limitation periods, as circumstances may from time to time require. An amendment deleting a statute of repose disturbs no employer's substantive right prior to the occurrence of an "injury by accident." For that reason, the 1983 amendment, as applied to this case, had no unconstitutional retrospective effect, and *U.S. Gypsum* is inapposite.

Basic appealed the deputy commissioner's award to the full commission on the legal question considered above as well as on the factual issue whether the evidence supported the deputy commissioner's finding that the diagnosis of occupational disease was first communicated to Mr. Roller on August 22, 1983. As noted above, the deputy commissioner's findings of fact were supported by credible evidence in the record. Because the full commission did not modify those findings or take additional evidence upon its review of the award, we will consider those findings conclusive upon appeal. *See* Code § 65.1-98; *Caskey* v. *Dan River*, 225 Va. 405, 411, 302 S.E.2d 507, 510 (1983); *Sky Chefs* v. *Rog-*

*ers*, 222 Va. 800, 805, 284 S.E.2d 605, 607 (1981). Accordingly, we conclude that the Court of Appeals erred in affirming the Industrial Commission's dismissal of the claim on statute-of-limitations grounds.

Basic's appeal to the full commission raised an additional ground. Mrs. Roller reached a settlement in a civil action in a federal court, after her husband's death, against Fibreboard Corporation, a supplier of asbestos products. Basic contends that the settlement prejudiced the right of subrogation given by Code § 65.1-41 against any "other party [liable] for such injury or death," and that Mrs. Roller's claim should therefore be barred. The deputy commissioner ruled against Basic on this question, but because on review the claim was dismissed on statute-of-limitations grounds, neither the Industrial Commission nor the Court of Appeals considered the question. Because the subrogation question was neither briefed nor argued here, we will not dispose of it.

Accordingly, we will reverse the judgment of the Court of Appeals and remand the case to that court with direction to further remand it to the Industrial Commission for further proceedings consistent with this opinion, limited to the subrogation question described above.

*Reversed and remanded.*