## CIRCUIT COURT OF LOUDOUN COUNTY

Paul R. Allen
and Darcel C. Allen,
Co-Administrators
and Personal Representatives
of the Estate of
Shay Morgan Allen

    v.

Loudoun County
Sanitation Authority

Case No. (Civil) 56949

November 2, 2009

By Judge Burke F. McCahill

The Plaintiffs have filed a motion to reconsider my ruling on September 29, 2009. On that date, I sustained the Defendant's Plea in Bar to Count IV based on the statute of limitations. Count IV raises a claim of public nuisance.

*Facts*

The facts are not in dispute. The Plaintiffs filed a lawsuit based on the wrongful death of their son from injuries sustained on May 30, 2006. This suit was filed within the applicable statute of limitations. The suit as amended consisted of three separate counts: Negligence, Gross Negligence, and Willful and Wanton Negligence. Prior to submission to the jury, the

plaintiffs elected to take a nonsuit. An order of nonsuit was entered on February 19, 2009.

Thereafter the plaintiffs filed suit on July 20, 2009 (within six months of the nonsuit). This lawsuit consisted of four separate counts: Negligence, Gross Negligence, Willful and Wanton Negligence, as well as a new Count IV based on a claim of Public Nuisance. The new public nuisance count was not contained in the original or the amended complaint. The defendant filed a plea in bar based on the statute of limitations to this new Count IV. I sustained the plea in bar, and the plaintiffs have asked for reconsideration.

## Discussion

It does not appear disputed that the applicable statute of limitations to Count IV seeking damages for injuries causing death is two years. See § 8.01-243(A) and § 8.01-244. The injuries and death occurred on May 30, 2006, and this suit was filed on July 20, 2009. Accordingly, in the absence of some provision that tolls the statute of limitations with respect to Count IV or some other provision of law that permits this new claim to be filed, Count IV is barred by the statute of limitations.

I have carefully considered the authorities and arguments presented. I agreed to reconsider following my ruling on September 29, 2009, and have received additional written argument. Having reconsidered, I again sustain the defendant's plea in bar for the reasons set forth in this opinion.

The applicable statute that controls this decision is § 8.01-229(E) (3). This subsection addresses the statute of limitations when a plaintiff has suffered a nonsuit:

> If a plaintiff suffers a voluntary nonsuit as prescribed in § 8.01-380, the statute of limitations *with respect to such* action shall be tolled by the commencement of the *nonsuited action*, and the plaintiff *may recommence his action* within six months from the date of the order entered by the court, or within the original period of limitation, or within the limitation period as provided by subdivision B 1, whichever period is longer. This tolling provision shall apply irrespective of whether the *action* is originally filed in a federal or a state court and recommenced in any other court, and shall apply to all *actions* irrespective of whether they arise under common law or statute.

(Emphasis added.)

In ruling on September 29, 2009, I relied on the legislature's use of the term "action." I still believe that this term is central to a determination of this plea in bar However, based on my analysis of the case law, I also believe that the terms "cause of action" and "right of action" should be

examined. Counsel for the defendant in her brief in opposition to the motion to reconsider correctly observes that counsel for the plaintiffs have even used additional terms such as "claim," "case," and "entire case." I do not believe I have to analyze these, but the use of the various terms emphasizes the fact that different terms are often used interchangeably.

*Action*

The legislature's use of this term in this subsection was purposeful. Va. Code § 8.01-2 provides:

As used in this title, unless the context otherwise requires, the term:
1. "*Action*" and "suit" may be used interchangeably and shall include all civil proceedings whether upon claims at law, in equity, or statutory in nature and whether in circuit courts or district courts;

Va. Code § 8.01-228, the statute immediately prior to § 8.01-229, provides:

> Every action for which a limitation period is prescribed by law must be commenced within the period prescribed in this chapter. . . .

In *Trout v. Commonwealth Transp. Commissioner*, 241 Va. 69, 72-73, 400 S.E.2d 172, (1991), the Supreme Court analyzed the nonsuit statute and its applicability to condemnation proceedings. In the trial court, the judge found that, under § 8.01-380, a plaintiff could suffer a nonsuit as a matter of right "as to any cause of action or claim" (the language of § 8.01-380). The trial court then referred to the definition of "action" in Va. Code § 8.01-2 as including "all civil proceedings. . . ." Because "action" is included in the term "cause of action"[1] the trial court found § 8.01-380 applied to condemnation proceedings. The Supreme Court rejected this analysis stating: "An 'action' and a 'cause of action' are different."

Even within the body of § 8.01-229, it is clear that the terms "action" and "cause of action" are distinct and have different meanings. For example § 8.01-229(A)(1) provides:

> 1. If a person entitled to bring any *action* is at the time the *cause of action* accrues an infant. . . .

(Emphasis added.)

---

[1] As noted earlier, it is important that care be used regarding the terms. The Supreme Court has addressed the need for care in the use of the terms "action," "cause of action," and "right of action." This will be discussed later in the opinion.

Section § 8.01-229(A)(2)(a) provides:

> 2. After a *cause of action* accrues,
> a. If an infant becomes entitled to bring such *action* . . . .

See also § 8.01-243.

I conclude that the term "action" as used in § 8.01-229(E)(3) refers to the actual filing of a complaint (a suit) or "civil action" in the clerk's office. See Rule 3:2 of the Rules of the Supreme Court of Virginia. The context does not require reaching any other conclusion under § 8.01-2. It is the commencement of the civil action that stops the running of the statute of limitations. The statute clearly and unambiguously states that the statute is tolled with respect to "such action" by the filing of the nonsuited action. The plaintiff is authorized to recommence "his action." This is the action that was nonsuited. Nothing in the context suggests that action and cause of action are intended to be synonymous. The specific reference to § 8.01-380, wherein the term cause of action is used, would suggest the legislature was aware of the distinction. The use of "his action" and "such action" in § 8.01-229(E)(3) do not alter the plain meaning of these words nor do they require a construction that equates them to the term "cause of action."

### Cause of Action, Right of Action

An examination of the case law makes it clear that the terms "action," "cause of action," and "right of action" have often been used incorrectly and interchangeably. In addition, other terms such as "claim" have been used synonymously with these terms. The terms "cause of action" and "right of action" have been analyzed in various contexts including *res judicata*,[2] amendments to pleadings,[3] splitting of causes of actions,[4] the statute of limitations,[5] and nonsuits. *Trout v. Commonwealth Transp. Commissioner*, 241 Va. 69, 72-73, 400 S.E.2d 172 (1991).

The Supreme Court has on many occasions gone to great lengths to point out the distinctions between a "right of action" and a "cause of action":

> There is a tendency by some to treat "cause of action" and "right of action" as interchangeable terms. While a cause of action and right of action may occur simultaneously, they need

---

[2] *Davis v. Marshall Homes*, 265 Va. 159, 165-67, 576 S.E.2d 504 (2003).

[3] *Vines v. Branch*, 244 Va. 185, 188, 418 S.E.2d 890 (1992).

[4] *Jones v. Morris Plan Bank*, 168 Va. 284, 290-91, 191 S.E. 608 (1937).

[5] *Shipman v. Kruck*, 267 Va. 495, 501-03, 593 S.E.2d 319 (2004).

not do so. A right of action is a remedial right to presently enforce a cause of action.

*Stone v. Ethan Allen, Inc.*, 232 Va. 365, 367-69, 350 S.E.2d 629 (1986) (citations omitted).

The Court has observed that the case law has caused confusion:

> Many of the published cases treat "cause of action" and "right of action" as interchangeable terms and it is little wonder the parties and the trial court confused the two.

*First Va. Bank-Colonial v. Baker*, 225 Va. 72, 81-82, 301 S.E.2d 8 (1983).

Although efforts have been made to distinguish between these concepts, there is also confusion regarding the terms themselves. In this case, I do not feel the focus needs to be on the term "right of action." Because this is a wrongful death case, there is no question that the "cause of action" belongs to the decedent's beneficiaries. The "right of action" is vested in the personal representatives. This distinction is not an issue in this case nor is it critical to a determination of the proper interpretation of § 8.01-229(E)(3). However, the term "cause of action" must be analyzed, not because it is used in § 8.01-229(E)(3), but because it is used in § 8.01-380 and has had an impact on some of the case law that counsel has provided in support of their positions. Cause of action has been defined in various ways in our case law depending on the context. Even *Black's Law Dictionary Revised Fourth Edition* states:

> A "cause of action" may mean one thing for one purpose and something different for another.

See also *Bates v. Devers*, 214 Va. 667, 673, 202 S.E.2d 917 (1974).

There is support for the plaintiffs' position to deny the plea in bar in the case of *Hatfill v. New York Times*, 416 F.3d 320 (4th Cir 2004). This case involved defamation claims arising out of newspaper articles that implied that the plaintiff was involved in the anthrax case. Originally, the plaintiff filed a one count suit in the state court that alleged that the defendant's publication defamed him. The plaintiff nonsuited and refiled in federal court but included a second count. The second count set forth eleven discrete factual assertions in the article that defamed him. As in this case, the defendant filed a plea in bar raising the statute of limitations at to this new count. The district court sustained the plea, and the Fourth Circuit reversed. I respectfully disagree with the conclusion for several reasons.

First, while the opinion acknowledges the applicability of § 8.01-229(E)(3), there is no discussion or analysis of the term "action" in that statute as a distinct concept. Instead, the court analyzes the plaintiff's right

to take a nonsuit under § 8.01-380 as to any "cause of action." While it is important to note that the nonsuit statute uses the term "cause of action," § 8.01-229(E)(3) which is the statute critical to the statute of limitations analysis uses the term "action" and this distinction is not addressed.

Second, the Court, in its analysis of "cause of action" as part of the nonsuit statute, cites a definition of "cause of action" in *Roller v. Basic Construction Co.*, 238 Va. 321, 327-28, 384 S.E.2d 323 (1989);

> In a common law setting, a cause of action is a set of operative facts which, under the substantive law, may give rise to a right of action.

After adopting this as the definition of a "cause of action" in Virginia, the Court then concluded that when the plaintiff nonsuited in state court, he did so "with respect to the set of operative facts underlying his complaint." *Id.* Later, the Court concluded the tolling provision of § 8.01-229(E)(3) saved all "rights of action arising from that cause of action." *Id.* As I have noted, it is clear that there has been confusion in the courts over these terms. In addition, there are various definitions of "cause of action." Absent an analysis of the term "action" in § 8.01-229(E)(3) and some attempt to discuss the distinct concept of a cause of action in more detail, I do not find the case persuasive.

Third, the Fourth Circuit cites *Odeneal v. Thompson*, 63 Va. Cir. 71 (2003). While the Court in that case does discuss the term "action" and "cause of action," it rejected the assertion that the term "action" is more narrowly construed then "cause of action." In doing so, the distinction between these terms is not observed. Yet the Supreme Court has acknowledged the difference between these terms. *Trout v. Commonwealth Transp. Commission, supra.* The trial court also relied on the definition of "cause of action" in *Roller v. Basic Construction Co., supra.* The *Odeneal* opinion references *Davis v. Marshall Homes*, 265 Va. 159, 576 S.E.2d 504 (2003), but fails to point out the different definition of "cause of action" found in *Davis.* The trial court concluded that, if the claims in the new suit (after the nonsuit) arise out of the same cause of action then they are not barred. The Court applied a "transactional" approach, under § 8.01-229(E)(3) for purposes of the statute of limitations after the distinction between "action" and "cause of action" was blurred, an approach expressly rejected by the Supreme Court in *Davis* (in a *res judicata* context). The transactional approach is utilized in § 8.01-6.1 in the case of amendments. This is discussed later in the opinion.

In *Davis v. Marshall Homes*, 265 Va. 159, 171, 576 S.E.2d 504 (2003), the Supreme Court, on a *res judicata* issue, stated:

Our decision today is supported by our holding in *Allstar Towing, Inc. v. City of Alexandria*, 231 Va. 421, 344 S.E.2d 903 (1986). In *Allstar*, for purposes of *res judicata*, we adopted a definition of the term "cause of action" as "an assertion of particular legal rights which have arisen out of a definable transaction," *id.* at 425, 344 S.E.2d at 906 (quoting *Bates v. Devers*, 214 Va. 667, 672, n. 8, 202 S.E.2d 917, 921, n. 8 (1974)). . . .

"we explicitly reject the application of the transactional analysis test. . . ."

This definition more accurately describes this concept. It recognizes that the cause of action arises from a transaction. In other words, the cause of action arises from a set of facts. The *Roller v. Basic Construction Co.* case , *supra*, ignores this distinction and conflates a cause of action with the underlying facts that give rise to a cause of action: "a cause of action is a set of operative facts. . . . *Id.*

The Supreme Court often warns against the indiscriminate use of isolated statements of law in drafting jury instructions. See *Overton v. Slaughter*, 190 Va. 172, 177, 56 S.E.2d 358 (1949); *Blondel v. Hays*, 241 Va. 467, 473, 403 S.E.2d 340 (1991). This may be such an isolated statement. It does not seem to logically describe what is generally accepted as a cause of action. Later in the *Roller* opinion, the Supreme Court seems to implicitly acknowledge that the cause of action arises from the facts: "Although a typical common law plaintiff's right to sue does not accrue until he has sustained injury, and the statute of limitations only then begins to run as to him, certain rights and obligations may have become fixed at an earlier time when the wrongful act was done *when the cause of action arose*." *Id.* at 327-28 (emphasis added).

It is well established that a "set of operative facts" can give rise to several causes of action. A plaintiff may then elect to nonsuit any "cause of action" that is set forth in the "action" that he has filed. I disagree with the ruling in *Hatfill* that, when the plaintiff took a nonsuit, he did so with respect to the set of operative facts underlying his complaint. By statute, he takes a nonsuit as to a cause of action. He may have multiple causes of action from a set of facts. It cannot be reasonably maintained that the plaintiff in taking a nonsuit based on the "cause of action" set forth in his "action" was also nonsuiting other causes of action that he elected not to set forth in his "action." Yet this is the result obtained by not carefully defining a cause of action as something that arises from a set of facts as opposed to equating a cause of action to a set of facts. In making this ruling, I do not have to decide whether a transactional analysis should be utilized in the different contexts of the term. My focus is on the term action as used in the statute.

Both counsel have addressed § 8.01-6.1 in their briefs. That section provides:

> Subject to any other applicable provisions of law, an amendment of a pleading changing or adding a claim or defense against a party relates back to the date of the original pleadings for purposes of the statute of limitations if the court finds (i) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth in the original pleading, (ii) the amending party was reasonably diligent in asserting the amended claim or defense, and (iii) parties opposing the amendment will not be substantially prejudiced in litigating on the merits as a result of the timing of the amendment. In connection with such an amendment, the trial court may grant a continuance or other relief to protect the parties. This section shall not apply to eminent domain or mechanics' lien claims or defenses.

I do not find that this section is applicable. If the plaintiffs had sought amendment of this original suit, this statute would have allowed them to argue that the three part test, which includes a transactional test, would not prevent the new claim (cause of action) from being barred. The fact that an amendment requires this analysis demonstrates that a cause of action may be time barred if it is not included in the original suit unless it meets this test. This "recommencement" under § 8.01-229(E)(3) where plaintiffs' have added a new count for Public Nuisance following their nonsuit cannot be viewed as an amendment that is then subject to the three part test of this statute.

This statute was enacted in 1996 and is limited to amendments to pending actions as it relates to the statute of limitations. It changed the law regarding amendments. Previously, the Supreme Court analyzed whether amendments were barred by the statute of limitations using the test in *Vines v. Branch*, 244 Va. 185, 189, 418 S.E.2d 890 (1992). See also *Burks' Pleading and Practice* § 235 at 412-413 (4th Edition Boyd 1952). In *Vines*, the original motion for judgment and the amendment arose out of the same transaction; however, the amendment did state a new cause of action because different elements needed to be proved and a different measure of recovery would apply. The passage of § 8.01-6.1 reflected the General Assembly's shift to a transactional approach. *Davis v. Marshall*, 265 Va. 159, 184, 576 S.E.2d 504 (2003) (dissenting opinion). It is clear from the dissenting opinions in *Davis* that the majority's rejection of a transactional approach in defining a cause of action for *res judicata* purposes in *Davis* is not accepted by all members of the Court. The legislature did not add a right

to amend in § 8.01-229(E)(3) nor did they include a transactional test if a plaintiff included a new cause of action when it recommenced its action.

There is nothing in § 8.01-229(E)(3) that suggests that a plaintiff can recommence his action and add new claims. The plaintiffs want me to add an implicit right to amend and then a "transactional" analysis to this statute. The plaintiffs claim that, since the new cause of action arose out of the same operative facts, then even if the plaintiff had elected to not include this cause of action in its original action, it would not be subject to the statute of limitations (even if time barred before the nonsuit was taken). In other words, all causes of action that could have been included in the original suit, irrespective of whether they in fact were included, would not be time barred as long as the original action was filed within the applicable statute of limitations. There could be scenarios where the newly added cause of action arose out of the same transaction, but the statute of limitations had run on this cause of action when the original action had been filed. I agree with the defendant that this interpretation could defeat the purpose of the statute of limitations and circumvent the three part test of amendments founds in § 8.01-6.1. The new claim of Public Nuisance found in Count IV may arise out of the same conduct, transaction, or occurrence; however, it is a discrete cause of action as it requires different evidence then the claims for Negligence, Gross Negligence, and Willful and Wanton Negligence. The legislature only addressed amendments when they created this three part test. They did not address recommencement following a nonsuit.

## Conclusion

To summarize, I find that the plea in bar should be sustained. The focus has to be on interpreting the term "action" in § 8.01-229(E)(3). It is clear that this references the civil complaint that the plaintiff files. A plaintiff may have multiple causes of action that arise from a set of operative facts. There may even be different periods of limitation that apply to the different causes of action. When a plaintiff commences an action, he may elect whether to include all causes of action. If he later seeks to amend, his cause of action may be time barred unless he meets the test under § 8.01-6.1. If a nonsuit is taken, it is with respect to the cause of action that is asserted in the action he has filed. There is no nonsuit with respect to any unasserted causes of action. By statute, he is allowed to recommence his action within six months. I interpret this to refer to the action, which may include multiple causes of action, within six months. I do not believe it should be interpreted to allow him to file any cause of action arising from the operative facts unless that cause of action was previously claimed in the prior action. The cases relied upon by the plaintiff adopted a transactional definition of a cause of action in the nonsuit statute as a basis for the decision without

adequate analysis of the wording of the statute that uses "action" or the Supreme Court's rejection of the transactional analysis.

February 22, 2010

By Judge Thomas D. Horne

Plaintiffs filed the instant action for damages arising out of a vehicular accident that took the life of Shay Morgan Allen. A chronology was submitted by counsel for the defendant that outlines the procedural history of the case precedent to the instant motions having been filed.

Defendant has moved the Court for leave to file a late answer. Contrariwise, plaintiffs have moved for judgment on the issue of liability and that the Court set a trial on the issue of damages. Admittedly, defendant failed to file a timely answer in accordance with the Rules of the Supreme Court of Virginia. Should the Court now afford defendant leave to file a late answer? The Rules direct this only be done should the Court find "good cause."

Central to a determination of the instant motions is the alleged failure of the defendant to answer within twenty-one days of the entry of the order sustaining defendant's plea in bar to plaintiff's nuisance claim. A restatement of certain portions of the chronology is helpful to a resolution of the disputed motions. As the Court noted from the bench, the contextual universe of the action or inaction giving rise to the motions is as important as any other consideration to the outcome.

Plaintiffs commenced an earlier action arising out of the events leading to the death of plaintiff's decedent on July 24, 2007. The issues of liability and damages were joined upon an amended complaint and answer. Trial of that case, before a jury, began on February 17, 2009. Prior to closing arguments and after a three-day trial, plaintiffs elected to nonsuit their claim.

Plaintiffs timely filed the instant action for damages arising out of the accident on July 20, 2009. In response to the complaint, defendant filed a plea of sovereign immunity, demurrer, and plea of the statute of limitations. Another judge of this Court found at a hearing held on September 29, 2009, that the demurrer and plea of sovereign immunity should be overruled but that the plea of the statute of limitations to the nuisance claim should be sustained. Counsel for the defendant was directed to prepare an order memorializing the bench ruling of the Court.

Such an order was prepared promptly, endorsed by the parties, and forwarded to the Clerk for entry on October 8, 2009. The following day, counsel for the plaintiffs filed a motion to reconsider the sustaining of the plea to the nuisance count.

Regrettably, the original order reflecting the September 29, 2009, bench hearing never made its way to the judge for entry. It was lost in the clerk's office. A copy of the order would later be submitted by counsel and entered by the court on December 7, 2009. This Order did not provide for a time within which an answer was to have been filed.

In the interim, the judge responded to the earlier filed motion to reconsider in a well reasoned letter opinion dated November 2, 2009. For reasons stated in the letter, the motion to reconsider was denied. Not having yet received the draft Order from the September 29, 2009, hearing, the judge directed that counsel for the defendant prepare yet a "new order" that would incorporate the letter opinion by reference.

Again, counsel for the defendant promptly prepared and presented an order denying the motion to reconsider. This order was entered by the Court on December 23, 2009.

Counsel for the plaintiffs correctly observes that, to avoid default, an answer would have been required to have been filed within twenty-one days of the entry of the December 7, 2009, order. This would have been December 28, 2009. Va. Sup. Ct. R. 3:8(b). Such action was not taken. To now avoid default, the defendant must show "good cause" to file a late answer. Va. Sup. Ct. R. 3:19(b).

The Court is of the opinion that "good cause" has been shown and that the defendant, Loudoun County Sanitation Authority, should be granted leave to file an answer on or before March 12, 2010.

In evaluating "good cause" the factors outlined in *Emrich v. Emrich,* 9 Va. App. 288 (1989), are relevant to the analysis. In the analysis, the Court will assume, without deciding, that the Supreme Court of Virginia, by promulgation of the rule changes respecting default effective January 1, 2006, intended to enhance the burden on defendants to make a showing of "good cause" on the issue of liability. As plaintiffs suggest, this is to be logically inferred from a counterweighing relaxation of the impact of default upon the ability of defendants to present evidence on the issue of damages.

It is noteworthy, that, at no time in the lengthy history of this case, including a prior trial, save only the instant delay in the filing of the answer, did counsel for the defendant fail to timely act pursuant to a rule or order. To the contrary, both counsel for the plaintiffs and for the defendant promptly endorsed orders for entry by the Court. Indeed, the Court commends counsel for the plaintiffs and for the defendant for the prompt and professional handling of the orders requested by the Court that were lost or the subject of the motion for reconsideration.

Plaintiffs will not be prejudiced by the granting of the relief sought by the defendant. To the contrary, it reasonably may be inferred from the procedural history that there exist material matters of fact relating to plaintiffs' claim sufficient to make liability a jury issue. The relief defendant

seeks in this lawsuit relates to the damage claim that was the subject of the amended complaint and answer tried in the earlier action that was nonsuited.

There is an absence of any showing of bad faith in defendant's failure to timely file a response. Counsel has thoroughly briefed and argued the matters raised by the pleas and demurrer. Two of these pleadings were resolved in favor of the plaintiffs while one such plea was determined in favor of the defendant. As previously noted, the sustaining of the plea in favor of the defendant was the subject of a lengthy letter opinion.

Much of the delay occasioned after the initial ruling by the trial court on the pleas in bar and demurrer was occasioned by the clerk's having misplaced a timely filed order. However, there is nothing to suggest that the defendant, by counsel's actions, at any time purposefully instigated, sponsored, or perpetuated such a delay then or now.

In summary, by the granting of the relief sought by the defendant, the Court will not cause delay in the prosecution of the case or sanction "dilatory tactics." *Emrich*, at 292. While counsel neglected to follow the command of the Rule, it is neglect that is excusable and harms not the plaintiffs in the pursuit of their claim, nor offends the dignity of the Court in the management of its docket.

The Motion to File a Late Answer and in Opposition to Plaintiff's Motion for Entry of Judgment will be granted, and Plaintiff's Motion for Entry of Judgment in Favor of Plaintiff and Setting the Cause for Hearing on the Issue of Damages will be denied.