# CIRCUIT COURT OF THE CITY OF ROANOKE

Theresa Lawton-Gunter

v.

Julien H. Meyer, Jr.,
and Physicians to Women, Inc.

June 12, 2014

Case No. CL14-347

BY JUDGE DAVID B. CARSON

In this medical-malpractice case, Plaintiff Lawton-Gunter alleges that, in May and June 2011, Defendant Meyer negligently performed a total abdominal hysterectomy to treat a uterine myoma. According to Plaintiff, the surgery terminated a pending pregnancy and left Plaintiff infertile. In addition, Plaintiff alleges that Defendant Meyer negligently punctured her bowel and failed to monitor and treat Plaintiff properly after her surgery, causing her to develop a postoperative infection.

Plaintiff nonsuited her first action on January 27, 2014, and she recommenced her action on February 19, 2014. Defendants Meyer and Physicians to Women have filed a plea in bar, asserting that Plaintiff has improperly added new claims to her recommenced action. According to Defendants, Va. Code § 8.01-229(E)(3) does not toll the new claims, and the claims are thus untimely.

For the reasons that follow, I conclude that Plaintiff's new claims are untimely and thus grant Defendants' plea in bar as to those new claims.

*Facts*

Eleven days after her wedding in May 2011, Plaintiff Theresa Lawton-Gunter saw Defendant Dr. Julien Meyer, her OB/GYN, for her annual examination. During the examination, Dr. Meyer noted that Plaintiff's preexisting uterine myoma had grown and recommended its surgical

removal. Although Plaintiff told Dr. Meyer that she and her husband were hoping to have a child, Dr. Meyer recommended a total abdominal hysterectomy, advising Plaintiff that she would be unable to carry a child to term with her enlarged myoma. Dr. Meyer and Plaintiff scheduled the hysterectomy for June 24, 2011.

On May 25, 2011, Plaintiff began experiencing abdominal pain and her period was seven days late, so she called Dr. Meyer's office, Defendant Physicians to Women, and explained her symptoms. Dr. Meyer believed the pain was due to Plaintiff's degenerating fibroids, and he prescribed her medication for the pain. Dr. Meyer's office advised Plaintiff to take a pregnancy test and call back with the results. Plaintiff took a test and discovered that she was pregnant.

Plaintiff returned to Dr. Meyer on June 6, 2011. An ultrasound revealed a small fetus, but Dr. Meyer reported that the fetus had no heartbeat. Dr. Meyer reiterated that Plaintiff would be unable to carry a baby to term and that she needed a hysterectomy. Although Plaintiff asked if she had any other options besides the hysterectomy, Dr. Meyer told her the surgery was her best option. Plaintiff and Dr. Meyer rescheduled the surgery for June 10, 2011. That day, Plaintiff signed a consent form, consenting to the total abdominal hysterectomy only.

On June 10, 2011, Dr. Meyer performed a total abdominal hysterectomy and a left salpingo-oophorectomy. Dr. Meyer told Plaintiff that "everything went well," but Plaintiff was in considerable pain.

Over the next two days, Plaintiff's abdominal pain increased. Dr. Meyer examined Plaintiff, and, at his direction, a nurse administered an enema to reduce Plaintiff's pain. Her pain increased, however, and, eventually, Dr. Meyer realized Plaintiff had a perforated bowel. Dr. Meyer asked Dr. H'Doubler, a surgeon, to perform an emergency laparotomy. On June 12, 2011, Dr. H'Doubler discovered a bowel injury accompanied by peritonitis, and he repaired the bowel.

After the surgery, Plaintiff remained ill and she needed another surgery. Performing a third surgery, Dr. Callis discovered numerous abscesses, and he drained the abscesses and irrigated the abdomen. After this surgery, Plaintiff recovered and was discharged from the hospital on July 1, 2011.

After returning home, Plaintiff received at-home care. At the end of August 2011, she eventually returned to work.

On September 10, 2012, Plaintiff filed her initial Complaint in which she alleged that Dr. Meyer performed the salpingo-oophorectomy without her consent, negligently performed the surgeries by puncturing her bowel, and failed to properly monitor her postoperatively. The parties conducted discovery and prepared for trial, but Plaintiff nonsuited her action on January 27, 2014.

Plaintiff recommenced her nonsuited action on February 19, 2014. In her new Complaint, Plaintiff makes the same allegations as in the

September 2012 Complaint, but she also adds a number of new allegations. Specifically, in the February 2014 Complaint, she alleges that Dr. Meyer failed to properly assess the fetus's viability and Plaintiff's future ability to have a child, terminated Plaintiff's pregnancy, and left her infertile without advising her of any options that would have allowed her to continue the pregnancy or have a child in the future.

Alleging that the new claims are untimely, Defendants filed a plea in bar to Plaintiff's new claims.

*Analysis*

A. *Defendants' Plea in Bar*

1. *Standard of Review*

A plea in bar reduces litigation to a "distinct issue of fact which, if proven, creates a bar to the plaintiff's right of recovery." *Tomlin v. McKenzie*, 251 Va. 478, 480, 468 S.E.2d 882, 884 (1996). When asserting that a claim is untimely, the defendant bears the burden of proof. *Schmidt v. Household Fin. Corp.*, 276 Va. 108, 116, 661 S.E.2d 834, 839 (2008).

2. *Defendants Argue That New Claims Pleaded in the February 2014 Complaint Are Untimely*

Defendants assert that the new claims Plaintiff sets forth in her February 2014 Complaint are untimely. There is no dispute that Plaintiff's February 2014 action would be untimely if not for Va. Code § 8.01-229(E)(3)'s tolling provision for actions nonsuited under Va. Code § 8.01-380. According to Defendants, however, Plaintiff improperly brought *new* claims in the February 2014 action, claims that Plaintiff did not assert in the September 2012 Complaint.

In both her September 2012 and February 2014 Complaints, Plaintiff seeks to recover based on Defendants' alleged negligent medical treatment. In her September 2012 Complaint, Plaintiff claimed that Defendant Meyer breached his duties to her by:

> (a) Failing to provide appropriate preoperative education regarding risks and possible complications associated with the procedure and obtaining informed consent for the procedures performed;

> (b) Negligently performing a total abdominal hysterectomy and failing to use proper precautionary procedures during the surgery;

330

(c) Negligently removing the left ovary and Fallopian tube when the procedure was not properly discussed or consented to by the patient;

(d) Negligently perforating [Plaintiff's] small bowel, failing to recognize and correct same intra-operatively, and failing to document the method of injury;

(e) Failing to repair [Plaintiff's] bowel perforation intra-operatively;

(f) Failing to properly examine and interview [Plaintiff] on the first postoperative day;

(g) Failing to enter a proper notation of an interview and examination of [Plaintiff] on the first postoperative day;

(h) Negligently ordering a rectal enema, prior to a timely personal examination of [Plaintiff];

(i) Failing to realize that [Plaintiff's] clinical condition on the first and second postoperative days were consistent with a bowel perforation, when administration of a rectal enema is clearly contraindicated in such clinical circumstances;

(j) Failing to intervene in a timely and satisfactory fashion during the follow-up care of [Plaintiff] so as to prevent further injury to her from the perforation of her bowel;

(k) Failing to appreciate the severity and implications of [Plaintiff's] fever(s), pain, and related conditions;

(l) Failing to otherwise initiate appropriate care and treatment to prevent [Plaintiff] from developing infections and/or requiring subsequent surgeries and procedures;

(m) Failing to timely refer [Plaintiff] to and/or consult with another physician(s) for management of [Plaintiff's] pain and related symptoms;

(n) Failing to otherwise adhere to the applicable standard of care; and

(o) Other such negligence as may be determined through discovery.

Pl.'s Sept. 10, 2012, Compl. ¶ 52.

In her February 2014 Complaint, Plaintiff asserts a single "Medical Negligence" count. In addition to the allegations in paragraph 52 of the September 2012 Complaint, Plaintiff also alleges that Defendant Meyer breached his duties to her by:

(a) Failing to perform objective tests and complete a thorough evaluation of [Plaintiff's] pregnancy to determine the viability of the fetus and advise her in this regard prior to terminating the pregnancy;

(b) Pushing to perform a hysterectomy on June 10, 2011, instead of waiting to further evaluate the pregnancy and inform [Plaintiff] of her options both for the pregnancy and for alternatives that would preserve [Plaintiff's] fertility and her ability to bear children;

(c) Failing to inform [Plaintiff] of the possibility of viability of that and future pregnancies appropriately prior to performing the hysterectomy;

(d) Terminating the pregnancy prior to performing the hysterectomy in a separate procedure even if, as Dr. Meyer assumed, the fetus was no longer living;

(e) Advising [Plaintiff] that she was unable to have a successful pregnancy and that her only option was a hysterectomy; [and]

(f) Advising [Plaintiff] that she was unable to have a successful pregnancy and that her only option was a hysterectomy, and doing so without making a proper referral and/or consultation prior to performing a hysterectomy . . . .

Pl.'s Feb. 19, 2014, Compl. ¶ 59.

According to Defendants, paragraphs (a) through (f) of the February 2014 Complaint are new claims. Importantly, there are significant differences between the factual allegations in the two Complaints. In her September 2012 Complaint, Plaintiff does not assert that her fetus could have been brought to term. In her February 2014 Complaint, however, Plaintiff makes clear that, according to her, Defendant Meyer failed to recognize that her fetus could have been brought to term, failed to consider or advise her of options that would have allowed her pregnancy to continue, terminated her pregnancy, and left her infertile.

### a. *Virginia Code § 8.01-229 Does Not Toll Plaintiff's New Claims*

The parties disagree about whether Va. Code § 8.01-229 tolled Plaintiff's new claims. Plaintiff cites *Dunston v. Huang*, 709 F. Supp. 2d 414 (E.D. Va. 2010), for the proposition that Va. Code § 8.01-229(E)(3) tolls all claims that arise from the same transaction or occurrence as the claims made in the first action. Conversely, Defendants cite *Allen v. Loudoun County Sanitation Auth.*, 81 Va. Cir. 496 (2009), for the proposition that Va. Code § 8.01-229(E)(3) only tolls claims that rely on the same evidence as the claims made in the first action.

Both *Allen* and *Huang* make clear that Va. Code § 8.01-229(E)(3) tolls only the previously asserted "action." *Huang*, 709 F. Supp. 2d at 418 (noting that Va. Code § 8.01-229(E)(3) "applies only to 'such action.'..."); *Allen*, 81 Va. Cir. at 499 ("The statute clearly and unambiguously states that the statute is tolled with respect to 'such action' by the filing of the nonsuited action. The plaintiff is authorized to recommence 'his action.' This is the action that was nonsuited."). In addition, the previously asserted "action" includes only the causes of action actually asserted in that action. *Huang*, 709 F. Supp. 2d at 418 ("[I]t is clear that the word 'action' as used in the nonsuit statute of limitations tolling provision refers to the nonsuited cause or causes of action."); *Allen*, 81 Va. Cir. at 502 ("By statute [a plaintiff] takes a nonsuit as to a cause of action. He may have multiple causes of action from a set of facts. It cannot be reasonably maintained that the plaintiff in taking a nonsuit based on the 'cause of action' set forth in his 'action' was also nonsuiting other causes of action that he elected not to set forth in his 'action'."). Accordingly, Va. Code § 8.01-229(E)(3) tolls only the causes of action originally asserted in the first action. *Huang*, 709 F. Supp. 2d at 418 ("[T]he tolling provision does not apply to causes of action omitted from the nonsuited complaint."); *Allen*, 81 Va. Cir. at 504.

Although both *Allen* and *Huang* agree that Va. Code § 8.01-229(E)(3) tolls only previously asserted causes of action, the cases disagree about how to determine whether new claims are part of the previously asserted causes of action. Specifically, *Allen* holds that new claims are part of the previously asserted causes of action and thus tolled by Va. Code § 8.01-229(E)(3) only if the new claims rely on the same evidence as the claims asserted as part of the original causes of action. *Allen*, 81 Va. Cir. at 504. *Huang*, however, holds that new claims are part of the original causes of action if they arise from the same transaction or occurrence as the original causes of action. *Huang*, 709 F. Supp. 2d at 420 ("[I]t is the same transaction or occurrence test that measures the boundaries of a single cause of action as used in the nonsuit statute context.").

Under the circumstances, the critical inquiry for this Court is whether to adopt and utilize the same-evidence test followed by the court in *Allen*, or whether to adopt and utilize the same transaction-or-occurrence test followed by the court in *Huang*.

*Huang* rejected the same-evidence test in part because amendments to Va. Sup. Ct. Rule 1:6 and Va. Code § 8.01-6.1 rejected the same-evidence test in favor of the same transaction-or-occurrence test. *Huang*'s reliance on recent rejections of the same-evidence test in other contexts, however, ignores how the Supreme Court of Virginia defined "cause of action" in *Roller v. Basic Construction Co.*, 238 Va. 321, 384 S.E.2d 323 (1989).

In *Roller*, the Court stated unequivocally that, "[i]n a common-law setting, a cause of action *is a set of operative facts* which, under the substantive law, may give rise to a right of action." *Id.* at 327, 384 S.E.2d at 326 (emphasis added). A cause of action in Virginia is thus derived from a set of facts that may provide the pleader with legal or equitable relief. A transaction or occurrence, however, may include many sets of facts that can give rise to multiple causes of action. Thus, if I were to adopt and utilize the same transaction-or-occurrence test, this would improperly broaden the Supreme Court's definition of "cause of action," which is simply contrary to the law.

Again, Va. Code § 8.01-229(E)(3) tolls only the causes of action asserted in the original action. Unlike the transaction-or-occurrence test, the same-evidence test faithfully recognizes that *Roller* limits a "cause of action" to a discrete set of facts. Thus, I find and conclude that the same-evidence test utilized by the court in *Allen* is the appropriate method for determining whether new claims asserted in a recommenced action are part of a previously asserted cause of action.

Applying the same-evidence test to the facts in this case, it is clear that Plaintiff's new claims rely on evidence not asserted in the September 2012 Complaint. Specifically, the February 2014 Complaint sets forth new factual allegations about Plaintiff's intent to become pregnant, whether she could have brought her baby to term, whether she could have ever brought a baby to term in the future, and whether Defendant Meyer terminated Plaintiff's pregnancy.

Because Plaintiff's new claims do not rely on the same evidence as the cause of action asserted in the September 2012 Complaint, Va. Code § 8.01-229(E)(3) does not toll those claims. Thus, Plaintiff's new claims are untimely.

### b. *Virginia Code § 8.01-6.1 Does Not Save Plaintiff's New Claims*

Plaintiff argues that, even if her new claims do not benefit from Va. Code § 8.01-229(E)(3)'s tolling provision, they relate back to September 10, 2012, the original filing date of the first Complaint, under Va. Code § 8.01-6.1.

Virginia Code § 8.01-6.1 states as follows:

> an *amendment of a pleading* changing or adding a claim or
> defense against a party *relates back to the date of the original*

*pleadings* for purposes of the statute of limitations if the court finds (i) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth in the original pleading, (ii) the amending party was reasonably diligent in asserting the amended claim or defense, and (iii) parties opposing the amendment will not be substantially prejudiced in litigating on the merits as a result of the timing of the amendment.

Va. Code § 8.01-6.1 (emphasis added).

Although Plaintiff asserts that her new claims relate back to September 10, 2012, the new claims are not amendments to the September 2012 Complaint. Instead, they are claims asserted for the first time in Plaintiff's February 2014 Complaint. Because the new claims are not amendments to the September 2012 Complaint, they cannot benefit from Va. Code § 8.01-6.1.

### Conclusion

The new claims Plaintiff asserts in her February 2014 Complaint are untimely because they rely on distinct factual allegations. Because the claims are untimely, I must grant Defendants' plea in bar as to those new claims.